246 F.2d 200
 Al BIERMAN and William Miller
v.
Samuel MARCUS and Milmar Estate, Inc., a Corporation Organized Under the Laws of the State of New Jersey, Samuel Marcus, Appellant.
 No. 12073.
 United States Court of Appeals Third Circuit.
 Argued May 7, 1957.
 Decided July 3, 1957.
 
 Maurice Schapira, Aaron Lasser, Newark, N. J., Max Leichtman, New York City (Lasser & Lasser, Samuel M. Koenigsberg, and William Rossmoore, Newark, N. J., on the brief), for appellant.
 Maurice C. Brigadier, Jersey City, N. J. (Frank H. Itkin, Montclair, N. J., on the brief), for Milmar Estate, Inc.
 Abraham Chazin, Jersey City, N. J. (Chazin & Chazin, Jersey City, N. J., on the brief), for Miller and Bierman.
 Seymour Margulies, Jersey City, N. J. (George Kesselhaut, Newark, N. J., on the brief), for Kevelson.
 Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 As instituted in the district court this proceeding appeared to be an unexceptional strict interpleader with Miller, a citizen of New Jersey, and Bierman, a citizen of North Carolina, asking the court to decide whether Marcus, a citizen of New York, or Milmar, Inc., a New Jersey corporation, was entitled to certain money which plaintiffs admittedly owed to someone. The plaintiffs pictured their dilemma as arising out of a contract under which they purchased stock of Milmar, Inc., and agreed to pay for it in installments. The complaint asserts that Marcus is claiming and that Milmar, Inc., "may claim" the unpaid installments of purchase money. The plaintiffs cast themselves in the role of disinterested stakeholders. Accordingly, beginning when the complaint was filed and continuing periodically thereafter for about two years, the plaintiffs deposited with the court the entire balance of the purchase money, in all about $35,000.
 
 
 2
 It was not until October 1954, four years after the complaint was filed and two years after the last installment of purchase money had been paid into court, that any pleading was filed by either defendant. At that time answers were filed by the defendants together with cross claims raising a variety of other contentions among the parties. It is noteworthy that the answer of Milmar, Inc., admitted that the money was owed to Marcus while Marcus claimed, among other things, not that he should receive the impleaded fund, but rather that he had been defrauded in the original transaction. This four year delay and the failure of either defendant, even then, to claim the fund as paid into court strongly indicate that something very different from what had been alleged in the interpleader complaint was actually in controversy. Indeed, the pleadings subsequent to the complaint and the evidence introduced by the parties disclosed that the matters in controversy were the amount of stock Marcus had agreed to sell to Miller and Bierman and whether, for reasons we need not consider, Marcus was entitled to have the transaction set aside as fraudulent. In addition, the hearing disclosed a number of very involved disputes among the parties with the reference to a night club venture which had been incorporated as Milmar, Inc., but no dispute between the original defendants over the interpleaded fund.
 
 
 3
 At the conclusion of the case the court found against Marcus on almost all of his contentions and ordered that he be paid the impleaded fund and one other item which is of no significance for present purposes. Aggrieved at getting the fund, which the original complaint said he was claiming, rather than the different and antithetical relief he actually sought, Marcus has appealed, raising at the outset the question whether this is such a suit as should have been entertained under the Interpleader Act of 1936, as amended. 28 U.S.C. § 1335.
 
 
 4
 The Interpleader Act authorizes interpleader by an obligor where "two or more adverse claimants, of diverse citizenship * * * are claiming or may claim * * *" the impleaded fund or obligation. The district court viewed Marcus of New York and Milmar, Inc., of New Jersey to be actual or potential adverse claimants within the meaning of the statute. However, appellant Marcus urges that the plaintiff "did not in good faith fear claims of both defendants" and for that reason had no standing to invoke the equitable jurisdiction of interpleader.
 
 
 5
 It is well established that without real fear of the vexation and hazard of conflicting claims, an obligor cannot maintain interpleader. This remedy was developed by equity so that a stakeholder could avoid being subjected to such hazard and vexation. Thus, in the very nature of the problem it seeks to solve, the federal Interpleader Act requires "adverse claimants" who are claiming or may claim the same fund. Of course, only one claim will ultimately be sustained. Thus, jurisdiction in interpleader is not dependent upon the merits of the claims of the parties interpleaded, and a plaintiff can maintain the action even though he believes that one of the claims is valid and the other, or others, without merit. See John Hancock Mut. Life Ins. Co. v. Kraft, 2 Cir., 1953, 200 F. 2d 952; Hunter v. Federal Life Ins. Co., 8 Cir., 1940, 111 F.2d 551; Metropolitan Life Ins. Co. v. Segaritis, D.C.E.D.Pa. 1937, 20 F.Supp. 739.
 
 
 6
 On the other hand, that which is advanced as an adverse claim "may be so wanting in substance that interpleader under the statute may not be justified". New York Life Ins. Co. v. Lee, 9 Cir., 1956, 232 F.2d 811, 813. See also Kahn v. Garvan, D.C.S.D.N.Y.1920, 263 F. 909, 915. While the stakeholder is not obliged at his peril to determine which claimant has the better claim, he must have some real and reasonable fear of exposure to double liability or the vexation of conflicting claims to justify interpleader. See John Hancock Mut. Life Ins. Co. v. Kraft, 2 Cir., 1953, 200 F.2d 952, 953-954. His bona fide purpose must be to rid himself of this vexation and the expense of resisting conflicting claims. See Lockridge v. Brockman, D.C.N.D.Ind. 1956, 137 F.Supp. 383. As Professor Chafee has put it, there must be in every interpleader a real fight over the res. Chafee, Broadening the Second Stage of Federal Interpleader, 56 Harv.L.Rev. 929, 985 (1943). Several of the cases that plaintiffs have cited to us in their brief to show that claims need not be of prima facie validity point out this requirement of good faith. Hunter v. Federal Life Ins. Co., 8 Cir., 1940, 111 F.2d 551, 556; First National Bank of Jersey City v. Fleming, D.C.D.N.J.1950, 10 F.R.D. 159, 160; Massachusetts Mut. Life Ins. Co. v. Weinress, D.C.N.D.Ill.1942, 47 F.Supp. 626, 627, 631. It follows that, where the plaintiff knows that he can safely pay one party without substantial risk of vexatious demand by a rival claimant interpleader will not lie.
 
 
 7
 In this case it is clear that the plaintiffs did not believe or assert in good faith that there was any danger of Milmar, Inc., claiming the unpaid purchase money. We say this because of a fact not heretofore mentioned in this opinion. At the time Miller and Bierman filed their complaint expressing fear that Milmar, Inc., might claim the purchase price of the shares, they were the sole stockholders of Milmar, Inc., and in complete control of that corporation. Moreover, they knew as principals in the sale transaction that a procedure of canceling outstanding Milmar stock owned by Marcus and others and having Milmar, Inc., issue new stock to Miller and Bierman had been no more than the agreed mechanics of the transfer of stock from Marcus to them, which gave rise to the purchase money obligation they have sought to implead. Thus, when they impleaded Milmar, Inc., they knew that corporation had no claim on them for the purchase price and could not even assert a fictitious claim without their consent.
 
 
 8
 Unable to dispute these facts, appellees have sought to avoid them by an argument that is ingenious but not persuasive. In their brief they say: "The dangers envisaged arose from the possibility that [control of Milmar, Inc.] * * might change hands through action of creditors, receivership * * *, and that the persons who might obtain future control in such manner might demand of Miller and Bierman that they make payment to Milmar of the purchase moneys under the September 1948 contract in accordance with its literal terms, i. e., Milmar having been named therein as the `seller'."
 
 
 9
 We are unable to see how the plaintiffs could possibly have been apprehensive on this score. Of course they well knew that any such claim would be completely baseless. And being in control of Milmar, Inc., when this alleged danger occurred to them they could at anytime have Milmar, Inc., execute a formal document disavowing any interest in the payments and stating that Marcus was the sole party in interest on the selling side. Such a document would put any receiver on notice as to the true situation in regard to the stock transaction. Any investigation he might make would confirm this information, since one of the few points of agreement by all who participated in this transaction was that Marcus was the seller, not Milmar, Inc. It is not to be presumed that a receiver, thus informed, would proceed in bad faith to harass Miller and Bierman demanding payment to Milmar, Inc. Moreover, as this court has recently pointed out, receivers "are officers of a responsible court which can be relied upon to see that * * * obviously proper action is taken", so that fear of groundless and improper conduct by receivers cannot amount to an "adverse claim" within the conception of the Interpleader Act. B. J. Van Ingen and Co. v. Connolly, 3 Cir., 1955, 225 F.2d 740, 742.
 
 
 10
 Actually, what has been done in this suit has been to misuse interpleader, based on mere pretense of adverse claims to a fund, to obtain adjudication of controversies other than entitlement to that fund. While "the normal duty of a district court [is] to permit interpleader liberally to relieve parties of the hazards and vexations of conflicting claims against them", B. J. Van Ingen & Co. v. Connolly, supra, 225 F.2d at page 744, the asserted hazards and vexations here were as unreal as the asserted depredations of the casual ejector in the classic common law action to try land titles.
 
 
 11
 The interpleader action should have been dismissed once its true character was disclosed, as presenting no bona fide issue of the type essential to this form of equitable relief, and therefore, constituting an imposition upon the jurisdiction of the court.
 
 
 12
 Accordingly, the judgment will be vacated and the cause remanded with instructions to dismiss the complaint as not being predicated upon any bona fide fear of vexatious conflicting claims.