

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-27-2009

# Prudential Ins Co v. Hovis

Precedential or Non-Precedential: Precedential

Docket No. 07-4406

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Prudential Ins Co v. Hovis" (2009). *2009 Decisions*. Paper 1951.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1951

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-4406

_____

THE PRUDENTIAL INSURANCE COMPANY OF
AMERICA

v.

ROBERT L. HOVIS;
DAVID R. POTTER;
DENISE R. GERSKI

Robert Hovis,
                    Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 06-cv-02020)
District Judge: Honorable James F. McClure

_____

Argued December 2, 2008

_____

Before:  AMBRO and GREENBERG, Circuit Judges,

and O'NEILL,[*] <u>District Judge</u>

(Opinion filed:  January 27, 2009)

Thomas A. Berret, Esquire
Frederick J. Francis, Esquire
Beth A. Slagle, Esquire (Argued)
Meyer, Unkovic & Scott
535 Smithfield Street
1300 Oliver Building
Pittsburgh, PA 15222-0000

       Counsel for Appellant

Jonathan Dryer, Esquire (Argued)
Helen C. Lee, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker
601 Walnut Street
The Curtis Center, Suite 1130
Philadelphia, PA 19106-0000

       Counsel for Appellee

---

OPINION OF THE COURT

---

[*]Honorable Thomas N. O'Neill, Jr., Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

AMBRO, <u>Circuit Judge</u>

Faced with competing claims to the proceeds of a $100,000 life insurance policy, Prudential Insurance Company of America filed an interpleader complaint against the claimants, seeking to deposit the disputed sum with the District Court and withdraw from the proceedings. One of the claimants, Robert C. Hovis, then counterclaimed, alleging that Prudential had acted negligently and in bad faith in its handling of the policy changes that led to the dispute. The District Court ruled that the interpleader action was properly brought, and that, because it was properly brought, Prudential could not be held liable for its prior handling of the requested policy changes.

This case requires us to decide how far the protection of the interpleader device extends. Does bringing a valid interpleader action shield a stakeholder from further liability to the claimants not only with respect to the amount owed, but also with respect to counterclaims brought by the claimants? We hold that it can where the stakeholder bears no blame for the existence of the ownership controversy and the counterclaims are directly related to the stakeholder's failure to resolve the underlying dispute in favor of one of the claimants. Accordingly, we affirm the order of the District Court.

## I. Facts and Procedural History

In February 2003, Hovis, a Prudential representative, sold a life insurance policy in the sum of $100,000 to Bonnie L.

3

Shall, a retired widow.[1] The policy designated Shall's son, David R. Potter, as the primary beneficiary and her daughter, Denise Gerski, as the contingent beneficiary. Shortly thereafter, Shall and Hovis became romantically involved, and in mid-2004 began to live together. In 2005, Shall was diagnosed with a reoccurrence of cancer and given a very grim prognosis. On January 23, 2006, Shall submitted through Hovis a request to Prudential to change ownership of the policy from herself to Hovis and to change its primary beneficiary from Potter to Hovis.[2] The request described Hovis's relationship to Shall as that of "fiancé." It was signed by both Shall and Hovis in the presence of a former Prudential agent. On February 23, 2006, Shall died.

---

[1] This was one of two life insurance policies Hovis sold to Shall. The other named her children as beneficiaries and was distributed, following her death, without incident with the help of Hovis.

[2] According to Hovis, the beneficiary change was made to compensate him for money he had spent on work on Shall's home (which was to go to Shall's children after her death). The plan, as he described it, was that he would keep $30,000 of the insurance proceeds and devote the remaining $70,000 to paying down the mortgage on Shall's home. Hovis also explained that the purpose of the change in ownership was to avoid having Shall's son learn about the beneficiary change, and to expedite payment of the policy proceeds, thereby preventing a gap in mortgage payments after Shall's death.

When Hovis submitted the policy changes to Prudential, he specifically requested that they be processed on an expedited basis, due to Shall's terminal condition. Prudential, however, did not process the changes immediately because of an internal policy prohibiting its sales professionals from having an ownership or beneficiary interest in their clients' policies unless they are members of the "immediate family" of the policyholder. In order to receive an exception to that policy, Hovis was required to obtain approval from his managing director and Prudential's compliance division, something that he had not done at the time the changes were initially submitted.

In February 2006, Prudential began an investigation to determine whether to grant an exception in Hovis's case on the ground that he had an insurable interest in the policy. Hovis informed his managing director, Steve Marziotto, that Shall was his fiancé and that they had lived together and shared expenses for two years. At Marziotto's request, Hovis provided two items attempting to verify his relationship with Shall: a bank letter indicating that Hovis had a joint account with Shall and a copy of a marriage license. No effort was made by Marziotto to communicate with Shall, and she died while he was in the midst of his investigation. On March 2, 2006, Marziotto recommended that the beneficiary change be allowed, but that the ownership change be denied. Five days later, Hovis submitted a claim for the life insurance proceeds.

In March 2006, Prudential's Corporate Investigations Division ("CID") began a separate investigation into the policy

changes. The CID had a handwriting analysis done of the "Request to Change Ownership/Beneficiary," which analysis concluded that, due to Shall's physical condition when she allegedly signed the request, there was no way to verify the authenticity of her signature. The CID report also concluded that Hovis had only been joined with Shall on the latter's bank account in early 2006, just shortly before she died, and that the marriage license was dated January 6, 2006 and was valid for only sixty days. The CID then forwarded the matter to Prudential's Law Division to make an ultimate determination on the putative policy change. In April 2006, Prudential advised Hovis that it had yet to make a decision.

In May 2006, while Prudential was wrapping up its internal investigation, Potter, Shall's son, spoke with Prudential about the insurance policy. Only then did Potter learn that a policy change had been submitted naming Hovis as owner and beneficiary. According to Potter, Hovis had previously deflected all his attempts to check on the status of the insurance proceeds even though Hovis had helped him file a claim on his mother's other life insurance policy. On learning that the beneficiary change was still being investigated, and that, in the interim, he was listed as the beneficiary of his mother's policy, Potter informed Prudential that he intended to file a claim. In early June 2006, Potter sent a letter to Prudential asking to have the status of the policy resolved. He also expressed his belief that his mother would not have approved the changes and that Hovis must have submitted them fraudulently.

6

Prudential then decided to pursue an interpleader action, rather than resolve who was entitled to the funds. It informed both Hovis and Potter by letter of this decision, and, on July 17, 2006, Prudential brought an interpleader complaint in the Eastern District of Pennsylvania pursuant to Federal Rule of Civil Procedure 22, naming Hovis, Potter and Gerski as defendants. In its complaint, Prudential requested permission "to deposit its admitted liability with the Clerk of th[e] Court," and asked the Court to order that "the defendants . . . be permanently enjoined from instituting or prosecuting against Prudential in a proceeding . . . affecting the insurance proceeds due under the policy and on account of the death of Bonnie Shall." Venue was transferred to the Middle District of Pennsylvania at Hovis's request.

Hovis filed an answer contending that Prudential was not entitled to interpleader relief because "Prudential has no legally cognizable reason for failing to pay the policy proceeds to Hovis." In addition, Hovis sought a declaratory judgment against all parties, naming him as the proper beneficiary, and brought counterclaims against Prudential for breach of contract, negligence, breach of fiduciary duty, bad faith and unfair trade practices, all relating to Prudential's alleged failure to process Shall's request to change the ownership and beneficiary of her policy in a timely manner. Potter and Gerski filed an answer contesting Prudential's right to pass its failure to resolve ownership of the insurance proceeds onto the claimants themselves, and seeking declaratory judgment against all parties that they were the rightful owners of the proceeds.

7

Prudential moved for summary judgment on both its claim for interpleader relief and Hovis's counterclaims, arguing that "[a]s the federal rules provide for interpleader in a situation like this, defendant Hovis is estopped from counterclaiming for breach of contract, negligence, breach of fiduciary duty, bad faith and violations of [Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq.*]."  Shortly thereafter, Hovis reached a settlement with Potter and Gerski for distribution of the insurance proceeds. Nonetheless, in his brief in opposition to Prudential's motion for summary judgment, Hovis argued that while the issue of who was entitled to the interpleaded funds had become moot, that did not entitle Prudential to judgment in its favor on his counterclaims.[3]

On October 23, 2007, the District Court dismissed Prudential's interpleader complaint, along with the various declaratory judgment actions, as moot, and directed Prudential to pay the proceeds of the life insurance, plus interest, to Hovis, Potter and Gerski in accordance with their settlement agreement. *Prudential Ins. Co. of Am. v. Hovis*, No. 4:06-CV-2020, 2007 WL 3125084, at *2 (M.D. Pa. Oct. 23, 2007).  The Court also

---

[3] Potter and Gerski—who are not parties to this appeal—only opposed the grant of summary judgment to the extent that they argued that Prudential should be "directed to pay the policy proceeds directly to the respective Defendants in the manner agreed by them," rather than depositing those proceeds with the Court.

granted summary judgment to Prudential on Hovis's counterclaims on the ground that the appropriateness of Prudential's interpleader action shielded it from any liability relating to its failure to resolve the dispute over the interpleaded funds. *Id.* at *3–4. Hovis timely appealed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1), as the parties are diverse and the amount in controversy exceeds $75,000. We have jurisdiction under 28 U.S.C. § 1291. "Our review of the [D]istrict [C]ourt's grant of summary judgment is plenary." *Jakimas v. Hoffmann La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007). As such, "[w]e apply the same standard employed by the [D]istrict [C]ourt, and view the facts in the light most favorable to the non-moving party." *Id.* We will affirm the District Court's grant of summary judgment only if no genuine issues of material fact exist and Prudential is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## III. Discussion

Rule 22 of the Federal Rules of Civil Procedure provides in pertinent part that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). The purpose of the interpleader device is to allow "a party who fears being exposed to the vexation of defending multiple claims

9

to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." 7 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1704 (3d ed. 2001), at 540–41 ("Wright & Miller"). Accordingly, interpleader allows a stakeholder who "admits it is liable to one of the claimants, but fears the prospect of multiple liability[,] . . . to file suit, deposit the property with the court, and withdraw from the proceedings." *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007). The result is that "[t]he competing claimants are left to litigate between themselves," while the stakeholder is discharged from any further liability with respect to the subject of the dispute. *Id.*

The typical interpleader action proceeds in two distinct stages. *See NYLife Distribs., Inc. v. The Adherence Group, Inc.*, 72 F.3d 371, 375 (3d Cir. 1995). During the first stage, the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants. *Id.*; *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641–42 (6th Cir. 2007); 7 Wright & Miller, § 1714, at 624–28. During the second stage, the court determines the respective rights of the claimants to the interpleaded funds. *NYLife*, 72 F.3d at 375; *High Technology*, 497 F.3d at 641. Because Hovis came to a private settlement with Potter and Gerski about how to distribute the life insurance proceeds, the second stage was never reached in this case. The subject of this appeal is what happened at the first stage—the District Court's determination that the interpleader action was

10

properly brought, and that Prudential is therefore discharged from any liability relating to Hovis's counterclaims.

Hovis challenges the District Court's dismissal of his counterclaims on two grounds. First, he argues that Prudential lacked the clean hands required of a party bringing an interpleader action and thus was not entitled to the protections such an action offers. He also argues that, even if Prudential were entitled to bring an interpleader complaint, that action did not encompass his counterclaims, which, as they are not themselves claims to the disputed funds, fall outside the scope of Prudential's interpleader action.

### A. Was the Interpleader Action Properly Brought?

The District Court concluded that this "case presents the perfect utilization of an interpleader" because Prudential "was presented with competing claims for the life insurance proceeds of Shall." *Hovis*, 2007 WL 312504, at *3. Hovis does not dispute that, at the time Prudential filed for interpleader, it was facing competing claims to the insurance proceeds. Rather, his argument is that Prudential is at fault for allowing things to get to that point. Therefore, he contends, Prudential was ineligible for interpleader relief of any kind, as it was not an "innocent stakeholder." *See Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988) (explaining that "[t]he typical plaintiff in interpleader is an innocent stakeholder who is subject to competing claims").

11

It is true that, "[b]ecause interpleader is an equitable proceeding, it is subject to dismissal based on equitable doctrines." *U.S. Fire Ins. Co. v. Abestospray, Inc.*, 182 F.3d 201, 208 (3d Cir. 1999); *see also High Technology*, 497 F.3d at 641 (noting that among the issues relevant to whether interpleader has been properly invoked is "whether any equitable concerns prevent the use of interpleader"). Indeed, "[i]t is a general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit . . . , he cannot have relief by interpleader." *Farmers Irrigating Ditch*, 845 F.2d at 232.

Here, however, it is difficult to see how Prudential is in any way to "blame [for] causing the controversy." *Id.* What Hovis is essentially arguing is that, by failing to process Shall's request to change the owner and beneficiary of her policy quickly, Prudential created circumstances in which there were competing claims to the proceeds. But this argument is premised on the strange idea that the controversy over entitlement to the funds was caused by Prudential's failure to pay out the proceeds to Hovis before Potter found out about Shall's request to have the owner and beneficiary of her policy changed, rather than the unmistakable appearance of impropriety surrounding that request.

There is every indication that, had Prudential expedited its investigation and paid out the proceeds to Hovis, it would have faced a suit from Potter and his sister relating to the same

12

funds.  Potter said as much in his deposition testimony.  Thus, insofar as there was a genuine dispute over entitlement to the insurance proceeds, and Prudential was not to blame for its existence, the interpleader action was properly brought.[4]  Whether bringing that action immunized Prudential against Hovis's counterclaims is a separate issue, to be addressed in the next section.  But Prudential was certainly entitled to *some* measure of interpleader protection.

### B.     Are Hovis's Counterclaims Outside the Scope of the Interpleader Action?

Hovis's second, and more substantial, argument is that, even if the District Court were correct in concluding that

---

[4] It is worth noting, in addition, that the rule that bars a party from obtaining interpleader relief when it caused the underlying controversy is not geared toward the kind of situation that Hovis alleges occurred here (*i.e.*, one in which the stakeholder's own errors are responsible for the ownership dispute).  Rather, that rule is meant to prevent a tortfeasor, facing claims from multiple parties, from using the interpleader device to cap its liability. *See Farmers Irrigating Ditch*, 845 F.2d at 232 ("Our attention has not been directed to any case where a tortfeasor in a multi-claim tort can admit liability, tender into court a minimal amount of money with the representation that such is all he has, force the claimants to prorate the amount deposited, and then obtain an order discharging him from any further liability for his tort.").  This case is not like that.

Prudential's interpleader action was properly brought, it nonetheless erred by dismissing his counterclaims. That is because, according to Hovis, those counterclaims are not claims *to* the interpleaded funds and thus fall outside the scope of Prudential's interpleader action.

Under the old interpleader practice, if a claimant alleged that the stakeholder was independently liable to him or her, the stakeholder would lose its right to bring the interpleader action. *See Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 507 (9th Cir. 1978); Note, *The Independent Liability Rule as a Bar to Interpleader in the Federal Courts*, 65 Yale L.J. 715, 716 (1956). The modern approach, however, is that, where a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court. *See High Technology*, 497 F.3d at 643; *Wayazta Bank & Trust Co. v. A & B Farms*, 855 F.2d 590, 593 (8th Cir. 1988); *Libby*, 592 F.2d at 507. That is what Hovis argues should have occurred here—Prudential should have been required to face Hovis's counterclaims even after entitlement to the disputed funds was resolved.

To assess this argument, it is necessary to determine how far interpleader protection extends. Hovis argues that it extends only to the claimants' competing claims to the funds. If so, his counterclaims are plainly independent of Prudential's interpleader action. While each relates to Prudential's handling

14

of Shall's life insurance policy, each nonetheless attempts to subject Prudential to liability apart from its duty to account for the insurance proceeds.

Hovis's proposed understanding of the scope of interpleader protection is not without support. Because what entitles a stakeholder to bring an interpleader action in the first place is the prospect of multiple liability, in the typical case the protection provided by that device is limited to the interpleaded defendants' competing claims to the stake. Thus, the normal rule is that interpleader protection does not extend to counterclaims that are not claims to the interpleaded funds. *Cf. State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535 (1967) (cautioning that "interpleader was never intended . . . to be an all-purpose 'bill of peace'").

This is not the typical case, however. Here, each of Hovis's counterclaims concern Prudential's failure to resolve its investigation in his favor and pay out the life insurance proceeds to him. *See Hovis*, 2007 WL 3125084, at *4 ("We are quite certain that if [Prudential] had immediately paid . . . Hovis the proceeds of Shall's life insurance policy, . . . Hovis would not have brought an action against [Prudential] based on any of the causes of action that were counterclaimed in the instant case."). As such, none of the counterclaims is truly independent of who was entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle.

To allow Prudential to be exposed to liability under these

15

circumstances would run counter to the very idea behind the interpleader remedy—namely, that a "stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim." *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957). Put another way, where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty. *See Lutheran Bhd. v. Comyne*, 216 F. Supp. 2d 859, 862 (E.D. Wis. 2002) (holding that the bringing of a valid interpleader action shields a plaintiff from liability for counterclaims where those "counterclaims are essentially based on the plaintiff's having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse claimants"); *Metropolitan Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001) (holding that interpleader protection extends to counterclaims that arise from "utilizing the protections afforded by the interpleader").

Accordingly, the District Court was correct to conclude that, given the nature of these particular counterclaims, Prudential's having brought an appropriate interpleader action shields it from any liability relating to those claims. It therefore properly discharged Prudential from liability for Hovis's counterclaims.

Hovis contends that if the District Court's dismissal of his counterclaims is upheld, the interpleader remedy will be transformed from one "designed merely to protect an innocent

16

stakeholder from being subject to having to pay out multiple claims" to one that "cloak[s] th[e] stakeholder in unfettered immunity from suit from all liability it may have incurred in dealing with claimants." Hovis's Br. 34. Our decision in no way turns the interpleader device into an all-purpose get-out-of-jail-free card. What we hold here is that where a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy.[5] That does not mean, for instance, that a stakeholder is free from liability for diminishing the value of the interpleaded stake simply because of the presence of an unrelated dispute as to who is its rightful owner. *Cf. High Technology*, 497 F.3d at 643 (holding that the existence of

---

[5] We note as well that, where a stakeholder unreasonably delays in filing the interpleader action, that can itself constitute ground for denying it the right to bring that action. *See Mendez v. Teachers Ins. & Annuity Assoc. and Coll. Ret. Equities Fund*, 982 F.2d 783, 788 (2d Cir. 1992). And, even where no such unreasonable delay occurred, the stakeholder may (depending on the relevant state law requirements) be liable for prejudgment interest covering the period between when the funds became due to someone and when they were deposited with the court. *See Atlin v. Security-Connecticut Life Ins. Co.*, 788 F.2d 139, 142 (3d Cir. 1986) (holding that bringing a valid interpleader action does not bar a state law claim for prejudgment interest where such interest accrues as a matter of right).

conflicting claims of entitlement to isotopes in the stakeholder's possession did not immunize the stakeholder against potential liability for damage sustained by those isotopes while in its custody). Our decision here is even potentially consistent with holding a stakeholder liable for its investigation of ownership of the stake, at least where defects in its investigation can plausibly be blamed for the existence of the underlying ownership controversy.

But that is not our case. The closest Hovis gets to alleging something of that nature is his contention that Prudential was negligent for failing to interview Shall while she was still alive. However, given both that Shall died a mere 31 days after the policy changes were made, and that it is not at all clear that speaking to her in her diminished state would have resolved the underlying controversy, we cannot say that Prudential's failure to speak with her is to blame for the dispute over entitlement to the proceeds of her life insurance policy. We therefore hold that Prudential cannot be liable for failing to resolve the ownership controversy prior to bringing the interpleader complaint.

## IV. Conclusion

Because there was a legitimate dispute over entitlement to Shall's life insurance proceeds, and because Prudential was not to blame for the existence of that dispute, Prudential was eligible to bring an interpleader action to resolve that controversy. Bringing that action, in turn, protected it not only

18

from further liability to the claimants for the amount owed under the life insurance policy, but also from liability arising out of its decision to settle the ownership controversy by way of interpleader.  We therefore affirm the District Court's grant of summary judgment to Prudential.