

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-16-2009

# Reginald Sydnor v. Ofc of Personnel Mgm

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3099

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Reginald Sydnor v. Ofc of Personnel Mgm" (2009). *2009 Decisions.* Paper 1179.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1179

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-3099

REGINALD L. SYDNOR,
                                                    Appellant
v.

OFFICE OF PERSONNEL MANAGEMENT

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-06-cv-00014)
District Judge: Honorable Gene E.K. Pratter

Submitted Under Third Circuit LAR 34.1(a)
May 13, 2009

Before: AMBRO, ROTH, <u>Circuit Judges</u> and FISCHER[*], <u>District Judge</u>

(Opinion filed: June 16, 2009)

OPINION

AMBRO, <u>Circuit Judge</u>

        In January 2006, Reginald L. Sydnor brought a *pro se* action against the Office of

---

[*]Honorable Nora Barry Fischer, United States District Judge for the Western District
of Pennsylvania, sitting by designation.

Personnel Management ("OPM") in the Eastern District of Pennsylvania. The action related to Sydnor's 1998 termination as an Administrative Law Judge ("ALJ") for the Social Security Administration ("SSA") and his subsequent three-year debarment from federal service, as well as his later unsuccessful efforts to get his suitability for federal service restored after his period of debarment concluded. The District Court disposed of all his claims at the pretrial stage, either on a motion to dismiss for failure to state a claim or on a motion for summary judgment. Sydnor now brings this *pro se* appeal. We affirm the judgments of the District Court.[1]

## I.

Because we write solely for the parties, we recite only those facts necessary to our decision. Sydnor is an African-American veteran with over 17 years of military and competitive federal-service experience. He was injured during his employment with the Equal Employment Opportunity Commission and was placed on federal disability retirement on August 5, 1994. On March 2, 1997, Sydnor began a trial employment period as an ALJ with the SSA in Vorhees, New Jersey, thus relinquishing his disability retirement benefits.

On September 2, 1997, SSA relieved Sydnor of his ALJ duties and placed him on administrative leave. That action was in response to an investigation by OPM, which

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

2

determined that Sydnor had intentionally included false information in his ALJ application and related forms.[2] On January 13, 1998, OPM issued a negative suitability letter, which, among other things, barred Syndor from federal employment for three years. On February 11, 1998, Sydnor filed an appeal with the Merits Systems Protection Board ("MSPB"), challenging both OPM's unsuitability determination and his debarment. While his appeal was pending, Sydnor was placed on indefinite suspension without pay.[3] On June 11, 1998, MSPB affirmed OPM's unsuitability and debarment decisions. Sydnor appealed, and MSPB denied his appeal on December 30, 1998. On February 1, 1999, SSA officially removed him from service as a federal employee pursuant to a Notification of Personnel Action (SF-50). The SF-50 identified the MSPB's December 30, 1998 order dismissing Sydnor's appeal as the reason for his removal, and, accordingly, set December 30, 1998 as his date of removal from federal employment.

Sydnor then brought suit against OPM and SSA in the District of Maryland, alleging that the actions of those two agencies had been racially discriminatory in violation of Title VII of the Civil Right Act of 1964, as well as arbitrary and capricious, an abuse of discretion and unsupported by law or fact. In October 1999, the District

---

[2] Specifically, OPM found that Sydnor had lied about the circumstances surrounding his departure from the Equal Employment Opportunity Commission, where he worked from 1978 through 1993, and about whether he was employed between 1993 and 1997.

[3] On March 3, 1998, Sydnor filed a second appeal with the MSPB, challenging the SSA's decision to place him on indefinite suspension without pay. That appeal was consolidated with his prior appeal.

3

Court granted the defendants' motion for summary judgment, characterizing Sydnor's claims as "frivolous." *Sydnor v. LaChance*, No. JFM-99-228, slip op. at 2 (D. Md. Oct. 26, 1999). That judgment was affirmed by the United States Court of Appeals for the Fourth Circuit. *Sydnor v. LaChance*, 210 F.3d 362 (4th Cir. 2000) (Table).

Starting in August 2000, Sydnor made various attempts to determine how to get his suitability for federal employment restored once his debarment ended on January 13, 2001. It was explained to Sydnor that OPM would not itself initiate a suitability determination. Rather, the process laid out for him was that, once his period of debarment ended, he would be free to apply for federal employment, and that any agency that hired him would then initiate the subsequent investigation into his suitability. Beginning in June 2001, Sydnor applied for employment with numerous federal agencies, each time without success.

During that same period, Sydnor also attempted to get his federal disability retirement reinstated. In September 2003, he was informed by OPM that "since you did not request reinstatement of your disability annuity within one . . . year of the date of your reemployment, the option of reinstating your original disability annuity is not available to you." Sydnor then made numerous unsuccessful attempts, with both SSA and OPM, to have his date of removal from federal employment changed from December 30, 1998 (the date of MSPB's final judgment) to January 13, 1998 (the date of he was initially deemed unsuitable for federal employment by OPM), believing that this would allow him to get

4

his annuity restored.

In January 2006, Sydnor brought the action that is the subject of this appeal. His initial complaint contained four separate counts, none of which cited a specific statutory provision or regulation OPM had allegedly violated.[4] In response to OPM's motion to dismiss, Sydnor narrowed his action down to two discrete claims: a claim under the

---

[4] Those four counts were as follows:

> 1. OPM's policy and practice to debar and instruct the employing agency to remove Mr. Sydnor without any instructions to SSA as to specific terms, conditions and duration of the removal discipline, arbitrarily and indefinitely disciplines Mr. Sydnor without the statutory administrative review, approval or appeal the employing agency would afford other similarly situated employed ALJs.

> 2. OPM's failure to instruct SSA and specify the terms, conditions and duration of Mr. Sydnor's agency removal has denied Mr. Sydnor's reinstatement for disability retirement solely because Mr. Sydnor exercised his administrative due process procedural right to appeal OPM's unsuitability and debarment determinations.

> 3. OPM's debarment policy and practice has the cause and effect to initiate excessive and disparate agency disciplinary actions against Mr. Sydnor, which is contrary to SSA's own established precedent for disciplining similarly situated employed ALJs.

> 4. Defendant's unsuitability and debarment policy and practice has the cause and effect to expel Mr. Sydnor from federal employment without any administrative remedy.

*Sydnor v. OPM*, No. 06-0014, 2007 WL 172339, at *2 n.3 (E.D. Pa. Jan. 23, 2007).

Administrative Procedures Act ("APA"), 5 U.S.C. § 702, relating to whether OPM violated its own regulations by failing to make a suitability determination after his debarment period ended, and a claim under the Privacy Act, 5 U.S.C. § 552a(g)(1), relating to whether OPM should be directed to change his date of removal from federal service to the date on which he was initially deemed unsuitable. *Sydnor v. OPM*, No. 06-0014, 2007 WL 172339, at *2 (E.D. Pa. Jan. 23, 2007).[5]

On January 23, 2007, the District Court granted OPM's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) with respect to Sydnor's Privacy Act claim. *Id.* at *9–10. However, it denied OPM's motion to dismiss with respect to the APA claim, holding that, while Sydnor had failed to allege a violation of any of the specific regulations he cited, it was possible that OPM's failure to conduct a suitability determination in Sydnor's case had violated 5 C.F.R. § 731.601, a regulation that was in effect for roughly two-and-a-half months following Sydnor's period of debarment. *Id.* at *7–8. Accordingly, the Court reserved judgment on Sydnor's APA claim until the parties had fully addressed that regulation's bearing on the case.

Shortly thereafter, Sydnor amended his complaint to include two additional counts—one alleging that the regulation that provided OPM with its authority to find him unsuitable for federal employment (5 C.F.R. § 930.214) conflicts with 5 U.S.C. § 7521,

---

[5] The District Court aligned those two counts with counts two and four of Sydnor's initial complaint and treated counts one and three from that complaint as voluntarily dismissed. *Id.* at *3. Sydnor is not attempting to revive those counts on appeal.

the statute governing adverse employment actions against ALJs, and the other alleging that the procedures OPM used to find him unsuitable and to bar him from federal employment conflicted with those set out in § 7521.[6] On July 11, 2007, the District Court granted OPM's motion for summary judgment with respect to the two new counts, describing both claims as "frivolous and untimely," as well as "barred by the doctrine of *res judicata*." *Sydnor v. OPM*, No. 06-0014, 2007 WL 2029300, at *4, *6 n.6 (E.D. Pa. July 11, 2007). On May 7, 2008, the District Court granted summary judgment to OPM on Sydnor's APA claim, holding that, while 5 C.F.R. § 731.601 would have required the OPM to conduct a suitability determination had Sydnor properly requested one, he failed to do so in the brief window between when his debarment period ended and when that regulation was superseded. *Sydnor v. OPM*, No. 06-0014, 2008 WL 1990808, at *4 (E.D. Pa., May 7, 2008).

## II.

Sydnor appeals three separate orders—the January 23, 2007 order dismissing his Privacy Act claim, the July 11, 2007 order granting summary judgment to OPM on the counts he added when he amended his complaint, and the May 7, 2008 order granting

---

[6] The District Court allowed Sydnor to amend his complaint, despite his failure to comply with Federal Rule of Civil Procedure 15(a), which provides that, after a responsive pleading has been served, a complaint can only be amended with either the opposing party's written consent or the leave of the Court.

7

summary judgment to OPM on his APA claim.[7] We affirm all three.

## A.

The Privacy Act "permit[s] [an] individual to request an amendment of a record pertaining to him . . . which the individual believes is not accurate, relevant, timely, or complete . . . ." 5 U.S.C. § 552a(d)(2)(B)(I). Sydnor argues that he is entitled to have his federal employment records changed to reflect that he was terminated from his position as an ALJ on January 13, 1998, the date OPM initially deemed him unsuitable for federal employment—not (as his records currently indicate) on December 30, 1998—the date on which his administrative appeals became final and SSA officially converted his status from indefinite suspension without pay to removed from federal employment.[8]

---

[7] Our review of the District Court's dismissal of Sydnor's Privacy Act claim under Federal Rule of Civil Procedure 12(b)(6) is *de novo*. *See Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 302 (3d Cir. 2008). Accordingly, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Our review of the District Court's grant of summary judgment to OPM on Sydnor's other claims is also *de novo*. *See Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). As such, we "apply the same standard employed by the [D]istrict [C]ourt, and view the facts in the light most favorable to the non-moving party." *Id.* (quoting *Jakimas v. Hoffmann-La Roche Inc.*, 485 F.3d 770, 777 (3d Cir. 2007)).

[8] Sydnor contends that, with the benefit of the earlier termination date, he could get his disability annuity restored, since that would mean that his term as an ALJ would have run for less than one year. That, however, is not what Sydnor was told by OPM when it denied his request to reinstate his retirement disability status. Rather, he was informed that "since you did not request reinstatement of your disability annuity within one . . . year of the date of your reemployment, the option of reinstating your original disability annuity is not available to you." At any rate, since all Sydnor is asking for here is to have his records amended to reflect an earlier termination date, not to have his retirement disability

8

As the District Court recognized, this specific challenge is not cognizable under the Privacy Act. Sydnor does not dispute that his record accurately reflects that he was placed on indefinite suspension without pay while his administrative appeals were pending (and thus that he was not officially removed until after his appeals were exhausted). Rather, he is contending that, as a matter of policy, his date of departure from SSA should be identified with the date on which he was first deemed unsuitable for continued federal employment. Such a challenge lies outside the scope of the Privacy Act, which, as one of its implementing regulations makes clear, was not "designed to permit a collateral attack upon that which has been or could have been the subject of a judicial, quasi-judicial or administrative proceeding." 5 C.F.R. § 297.303(a); *see also id.* at § 297.303(b) (providing as examples of situations that fall under the Privacy Act the following: "when the [challenged] document is not identical to the individual's copy; or . . . not created in accordance with the applicable recordkeeping requirements"). Accordingly, the District Court correctly concluded that Sydnor failed to state a claim under the Privacy Act.

**B.**

The two counts Sydnor added when he amended his complaint both relate to OPM's alleged failure to comply with 5 U.S.C. § 7521 in making its unsuitability and

restored as a consequence of having his records amended, we need not address whether amending Sydnor's record in the way he requests would have the consequences he asserts.

9

debarment determination. Section 7521 provides that "[a]n [adverse employment] action may be taken against an administrative law judge . . . by the agency in which the administrative law judge is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). Sydnor argues both that the regulation that provided OPM with the authority to act in his case—5 C.F.R. § 930.214[9]—conflicts with § 7521, and that, as a general matter, the procedures through which he was deemed unsuitable and debarred did not comply with the protections set forth in § 7521.

Whatever the merits of these claims, they are barred by the doctrine of *res*

---

[9] 5 C.F.R. § 930.214, which implemented § 7521, has since been superseded by 5 C.F.R. § 930.211. Section 930.214 provided in pertinent part:

> An agency may remove, suspend, reduce in grade, reduce in pay, or furlough for 30 days or less, an administrative law judge only for good cause, established and determined by the Merit Systems Protection Board on the record and after opportunity for a hearing before the Board as provided in 5 U.S.C. § 7521 . . . .
>
> . . .
>
> The procedures in this subpart governing the removal, suspension, reduction in grade, reduction in pay, or furlough of 30 days or less of administrative law judges do not apply in making dismissals or taking other actions requested by OPM under §§ 5.2 and 5.3 of this chapter [which authorize OPM to conduct investigations of federal employees to ensure compliance with civil service laws, rules and regulations].

5 C.F.R. § 930.214(a), (c).

10

*judicata*. The action Sydnor brought against OPM in the District Court of Maryland concerned the initial decision to deem him unsuitable for federal employment and temporarily bar him from seeking federal employment (as opposed to the subsequent decisions not to alter his personnel file or reassess his suitability after his debarment period ended). The counts Sydnor added in his amended complaint attack the same decision challenged in his prior action (albeit not on precisely the same grounds).[10] The Supreme Court has made clear that "[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981). That plainly applies here, as these are challenges that Sydnor could have brought in the prior action. Accordingly, the District Court was correct to grant OPM summary judgment on these claims.

## C.

Finally, Sydnor contends that OPM violated its own regulations by failing to grant him a suitability determination after his period of debarment ended. The APA provides that "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Agency inaction is actionable under the APA where the "plaintiff asserts that an agency failed to take a *discrete* agency action that it was *required*

---

[10] Sydnor's complaint in his District of Maryland action attacked the procedures through which he was deemed unsuitable and debarred, but did not specifically reference § 7521.

11

*to take.*" *Norton v. S. Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphases in original).

That is what Sydnor alleges occurred here—OPM failed to conduct a suitability

determination when its regulations required it to do so.

Sydnor now concedes that, under the regulations in effect for the bulk of the period

following his debarment, OPM was not required to perform a suitability determination.

His argument revolves around 5 C.F.R. § 731.601, which was superseded on March 31,

2001, roughly two-and-a-half months after Sydnor's period of debarment ended. Section

731.601 provided in pertinent part:

> (a) . . . When an employee has been removed by an agency on
> charges (other than security or loyalty) . . ., the former
> employee may request OPM to determine his or her suitability
> for further employment in competitive service. OPM *shall*
> consider the request only if the former employee:
>
>> (1) Has completed any required
>> probationary period;
>>
>> (2) Has basic eligibility for
>> reinstatement; and
>>
>> (3) Includes a sworn statement
>> with the request which sets forth
>> fully and in detail the facts
>> surrounding the removal or
>> resignation.

*Id.* § 731.601(a)(1)–(3) (emphasis added). Arguably, then, § 731.601 required OPM to

conduct a suitability determination following Sydnor's period of debarment, provided that

Sydnor formally requested one and included the requisite sworn statement with that

12

request.

Sydnor concedes that he never formally requested a suitability determination from OPM. Rather, he maintains that, when he inquired with OPM about getting his suitability restored, he was told that a suitability determination would only be made at the behest of a federal agency offering him employment, a representation at odds with § 731.601. The record supports Sydnor's contention.[11]

Since Sydnor did not comply with the prerequisites for obtaining a suitability determination under § 731.601, he can only prevail on his APA claim if OPM's inaccurate representation estops it from arguing that Sydnor was not entitled to a suitability determination due to his failure to follow the procedures set out in § 731.601. However, "equitable estoppel will not lie against the Government as against private litigants." *OPM v. Richmond*, 496 U.S. 414, 419 (1990). We have held that, to succeed on an estoppel argument against the Government, a litigant must prove "(1) a misrepresentation by the [G]overnment, (2) which [he or] she reasonably relied on[,] (3) to [his or] her detriment[,] and (4) affirmative misconduct." *DiPeppe v. Quarantillo*, 337 F.3d 326, 335 (3d Cir. 2003). Sydnor cannot establish the fourth element—that there was "affirmative misconduct" on the OPM's part. In his brief, Sydnor makes vague allusions

---

[11] Specifically, the record includes a declaration from Patricia Rodemoyer, who was a suitability specialist at the time Sydnor first made inquiries about getting his suitability restored, in which she maintains that, while she does not recall speaking with Sydnor, the representation she would have made was that a suitability determination had to be requested by an employing agency, not the individual seeking employment.

13

to OPM's "bad faith actions [in] concealing proper . . . regulatory procedures from [him]." Sydnor's Br. 11. However, there is nothing in the record to suggest that anyone at OPM intentionally misled Sydnor. On the contrary, the record indicates that OPM officials who responded to Sydnor's inquiries described for him what they believed to be the proper procedures for reinstating his employment eligibility. Sydnor thus cannot prevail in his estoppel argument against the Government, and the District Court was correct to hold that Sydnor's failure to comply with the procedures set out in § 731.601 entitles OPM to summary judgment on Sydnor's APA claim.

* * * * *

For these reasons, we affirm the judgments of the District Court.