NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4093
_____

LEXINGTON INSURANCE COMPANY

v.

JACOBS INDUSTRIAL MAINTENANCE COMPANY, LLC;
JACOBS ENGINEERING GROUP, INC.;
HOVENSA, LLC
(D.C. No. 05-cv-00112)

HOVENSA, LLC

v.

LEXINGTON INSURANCE COMPANY
(D.C. No. 05-cv-00114)

       Hovensa, LLC,
        Appellant

_____

On Appeal from the District Court of the Virgin Islands
Division of St. Croix
D.C. Civil Action Nos. 05-cv-00112 & 05-cv-00114
(Honorable Curtis V. Gomez)
_____

Argued April 13, 2011

Before: SCIRICA, RENDELL and AMBRO, *Circuit Judges*.

(Filed : July 6, 2011)

ARDEN B. LEVY, ESQUIRE (ARGUED)
Bailey Gary
1615 L Street, N.W., Suite 650
Washington, D.C. 20036

DOUGLAS L. CAPDEVILLE, ESQUIRE
Law Offices of Douglas L. Capdeville, P.C.
2107 Company Street, Lot Four
P.O. Box 224191
Christiansted, St. Croix
U.S. Virgin Islands 00822
        Attorneys for Appellant

MARK E. COHEN, ESQUIRE (ARGUED)
Zelle, McDonough & Cohen, LLP
101 Federal Street, 14th Floor
Boston, Massachusetts 02110

ANDREW C. SIMPSON, ESQUIRE
Andrew C. Simpson Law Offices, P.C.
2191 Church Street, Suite 5
Christiansted, St. Croix
U.S. Virgin Islands 00820
        Attorneys for Appellee Lexington Insurance Company

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

This appeal arises from a statutory interpleader action under 28 U.S.C. § 1335 brought by Lexington Insurance Company to resolve disputes over liability coverage between two insureds, HOVENSA, LLC, and Jacobs Engineering Group, Inc. HOVENSA asserts the District Court lacked subject matter jurisdiction and erred in granting Lexington summary judgment in its favor on HOVENSA's counterclaims. We will affirm.

2

I.

Jacobs had contracted to perform maintenance work at HOVENSA's refinery from September 1999 until September 2002.  Under this arrangement, Jacobs purchased employment liability coverage from Lexington for itself and HOVENSA for claims arising out of the maintenance contract.  One policy provided coverage from September 30, 2000, through September 30, 2001.  Another provided coverage from September 30, 2001, through September 30, 2002.  The policies had a combined total coverage limit of $6 million.

Between 2000 and 2002, several Jacobs employees sued Jacobs and HOVENSA, alleging workplace discrimination.  By June 2005, Lexington had paid out nearly $2.5 million in connection with defending and settling these suits, leaving approximately $3.5 remaining under the policy.  At that time, seventeen employee suits remained pending. HOVENSA was named as a co-defendant in all but two of the seventeen suits. Settlement efforts were undertaken to resolve thirteen of the underlying seventeen suits. Of the four actions excluded from the settlement negotiations, two named Jacobs and HOVENSA as co-defendants, and two named only Jacobs.  In June 2005, HOVENSA demanded Lexington tender the remaining policy limit to pay for the proposed settlement.  Jacobs declined to consent to the proposed settlement so that it could continue to defend in order to reduce the eventual settlement value.  Lexington responded that it would not disburse the policy limits unless both HOVENSA and Jacobs consented to the settlement.

On August 5, 2005, Lexington filed this statutory interpleader action, pursuant to 28 U.S.C. § 1335, to resolve which insured was entitled to the remaining funds. Lexington filed a bond in the approximate amount of $3.5 million, representing the remaining amount under the policies. Lexington sought a discharge from liability above this limit. HOVENSA counterclaimed, seeking damages for defense and indemnity costs incurred as a result of Lexington's alleged breach of the insurance contract.[1]

In April, 2007, HOVENSA, Jacobs, and the underlying plaintiffs agreed to settle most of the underlying lawsuits for $10.6 million. HOVENSA and Jacobs split equally settlement costs in excess of Lexington's interpleader bond. The parties subsequently stipulated to the discharge of the bond. Lexington then allocated $3,585,603.67 toward the settlement. Both Lexington and HOVENSA moved for summary judgment on HOVENSA's breach of contract claims against Lexington.

The District Court granted summary judgment to Lexington on HOVENSA's counterclaims because it found the interpleader action shielded Lexington from any liability relating to its failure to resolve the dispute over the interpleaded funds.

## II.

"[I]nterpleader allows a stakeholder who 'admits it is liable to one of the claimants, but fears the prospect of multiple liability[,] . . . to file suit, deposit the property with the court, and withdraw from the proceedings.'" *Prudential Ins. Co. of Am.*

---

[1] Three days after Lexington filed its interpleader action, HOVENSA commenced an action against Lexington asserting the same claims as its counterclaims in the interpleader action. The District Court consolidated the interpleader and breach of contract actions.

4

*v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009) (alteration in original) (quoting *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007)). "The typical interpleader action proceeds in two distinct stages." *Id.* First, the court determines whether the action is proper and whether to discharge the stakeholder from liability. *Id.* Next, the court will determine the rights of the claimants. *Id.* HOVENSA contends the court erred by discharging Lexington from liability at the first stage.

A.

HOVENSA maintains that the court lacked jurisdiction over the action. The court has jurisdiction "of any civil action of interpleader" if the value of the stake at issue is "$500 or more" so long as "[t]wo or more adverse claimants, of diverse citizenship . . . , are claiming or may claim to be entitled to such money or property" and the plaintiff has deposited the money or property at issue, or a bond for such, with the court. 28 U.S.C. § 1335.[2]

---

Jacobs also filed counterclaims in the interpleader action. Lexington and Jacobs reached a settlement of Jacobs' claims, which were dismissed.

[2] The interpleader statute states:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of

The parties do not contest that the claimants are diverse, the amount in controversy is met, and that Lexington provided a sufficient bond. Instead, HOVENSA contends there was no jurisdiction because Jacobs was neither a claimant nor adverse (to HOVENSA), and because Lexington lacked the clean hands needed to seek the equitable remedy of interpleader.

We agree with the District Court that Lexington faced adverse claims from HOVENSA and Jacobs. "[J]urisdiction in interpleader is not dependent upon the merits of the claims of the parties interpleaded, and a plaintiff can maintain the action even though he believes that one of the claims is valid and the other, or others, without merit." *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957). While adverse claims need not be meritorious, they cannot be so wanting that the stakeholder lacks "a bona fide fear of adverse claims." *CNA Ins. Cos. v. Waters*, 926 F.2d 247, 251 (3d Cir. 1991) (quoting 3A J. Moore, J. Lucas, & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 22.08[1] (19th ed.

---

any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335.

1989)); *Bierman*, 246 F.2d at 202. It is clear that Lexington possessed a bona fide fear of adverse claims.

HOVENSA contends that it and Jacobs agreed on the ownership of the policy proceeds and therefore their claims or potential claims were not mutually exclusive. But although both HOVENSA and Jacobs shared in nominal ownership of the insurance policy, they sought to invoke rights under the policy to direct usage of funds in mutually exclusive ways. HOVENSA sought to use the entire balance of the policy coverage to settle the bulk of the remaining suits. Jacobs invoked Lexington's duty to defend the insured and sought to use the proceeds to continue to litigate the disputes.

HOVENSA also maintains that Jacobs never asserted an adverse claim. But a formal claim against the policy or suit by Jacobs was not required. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure (3d ed. 2001) ("[C]ourts should not dismiss an interpleader action simply because the claims confronting plaintiff have not been asserted."). The threat of litigation over use of the funds by Jacobs was sufficient to qualify Jacobs as one who "may claim to be entitled to such money or property." 28 U.S.C. § 1335(a)(1). The conflict over the use of remaining policy funds was sufficient to qualify HOVENSA and Jacobs as adverse claimants.

HOVENSA also argues that Lexington lacked the clean hands necessary to pursue the equitable action of interpleaded. There is "a general rule that a party seeking interpleader must be free from blame in causing the controversy." *Hovis*, 553 F.3d at 263 (citing *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir.

7

1988)).  We disagree with HOVENSA's contention that Lexington brought the interpleader action to avoid its contractual duties.  The record supports Lexington's good-faith attempt to resolve a dispute between the insureds and demonstrates Lexington sought the remedy of interpleader once it became clear HOVENSA and Jacobs would not be able to find a mutually acceptable resolution.

B.

Alternatively, HOVENSA contends even if jurisdiction were proper, the court erred in discharging Lexington from further liability by granting Lexington's motion for summary judgment on HOVENSA's counterclaims.  Lexington relies on *Prudential Insurance Co. of America v. Hovis*, 553 F.3d 258 (3d Cir. 2009).  In *Hovis*, we noted:

> Because what entitles a stakeholder to bring an interpleader action in the first place is the prospect of multiple liability, in the typical case the protection provided by that device is limited to the interpleaded defendants' competing claims to the stake. Thus, the normal rule is that interpleader protection does not extend to counterclaims that are not claims to the interpleaded funds.

258 F.3d at 264.  In *Hovis*, we concluded it would be "counter to the very idea behind the interpleader remedy" to allow counterclaims to proceed when not "truly independent" of the dispute underlying the interpleader action.  *Id.* at 264-65.  That is, it would violate the foundation of interpleader that "where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty."  *Id.* at 265.  Accordingly, we affirmed the discharge through interpleader of an insurer's liability to competing claimants to a life insurance policy.  *Id.*

8

HOVENSA contends that Lexington breached contractual duties by failing to tender the balance of the insurance policy at HOVENSA's request. But HOVENSA's claims are not "truly independent" of the interpleader claim's underlying dispute. HOVENSA alleges Lexington breached a legal duty by not tendering the funds over Jacobs' objection. If it had tendered the funds, the record is clear that Lexington (in Jacobs' view) would have breached a legal duty to Jacobs. This conflict is the basis of the interpleader action. In concluding that discharge was proper, the District Court did not need to adopt either claimant's interpretation of the policy, as HOVENSA contends. Rather, it properly found Lexington to be a disinterested stakeholder (once it became clear the policy would be exhausted) facing the risk of bona fide adverse claims as to who controlled the use of the policy funds. HOVENSA's counterclaims merely recapitulate the ownership dispute and fall within the discharge of liability "to the claimants both for further claims to the stake and for any claims directly relating to its failure to resolve that controversy." *Id.* at 265.

## III.

For the foregoing reasons, we will affirm the grant of summary judgment in favor of Lexington.

9