# United States Court of Appeals
## For the First Circuit

No. 22-1228

RENEE SEVELITTE,

Plaintiff, Appellant,

v.

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,

Defendant/Third Party Plaintiff, Appellee,

ROBYN A. CAPLIS-SEVELITTE, Personal Representative
of the Estate of Joseph F. Sevelitte,

Third Party Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and McElroy,* District Judge.

William K. Fitzgerald, with whom Law Office of W. Kevin
Fitzgerald was on brief, for appellant.
J. Christopher Collins, with whom Mirick, O'Connell, DeMallie
& Lougee, LLP was on brief, for appellee The Guardian Life
Insurance Company of America.
Joshua N. Garick, with whom Law Offices of Joshua N. Garick
P.C. was on brief, for appellee Robyn A. Caplis-Sevelitte.

---

* Of the District of Rhode Island, sitting by designation.

December 7, 2022

**LYNCH**, **Circuit Judge**.  In this interpleader action, Renee Sevelitte ("Renee"), the ex-wife of the decedent Joseph F. Sevelitte ("Joseph"), and Robyn A. Caplis-Sevelitte ("Robyn"), Joseph's widow, assert competing claims to the death benefit of a life insurance policy owned by Joseph and administered by the Guardian Life Insurance Company of America ("Guardian").  Guardian acknowledged liability but was unable to resolve who was the beneficiary of the policy.  Guardian's uncertainty stemmed from ambiguity as to whether a Massachusetts statute revoked Renee's beneficiary status on divorce, or whether Renee's and Joseph's divorce agreement preserved that beneficiary designation.

The district court discharged Guardian from the action and awarded the death benefit to Robyn.  For the reasons that follow, we affirm the discharge of Guardian but vacate and remand for further proceedings to determine who is entitled to the death benefit.  We also address various crossclaims, affirming in part and vacating in part.

## I.

Before laying out the facts of this dispute, we summarize the history and relevant provisions of the Massachusetts statute at issue.  See Mass. Gen. Laws ch. 190B, § 2-804.

At common law, divorce did not alter the beneficiary designation of an ex-spouse.  See Am. Fam. Life Assurance Co. of Columbus v. Parker, 178 N.E.3d 859, 863 (Mass. 2022).  But as

divorce became more common, many states enacted "automatic revocation-on-divorce" statutes. Id. Massachusetts was one such state: as of March 31, 2012, the Massachusetts Uniform Probate Code provides that divorce typically revokes the beneficiary status of an ex-spouse. See id.; Mass. Gen. Laws ch. 190B, § 2-804(b) (hereinafter "section 2-804(b)").

> As relevant here, section 2-804(b) provides as follows:
>
> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage:
>
> (1) revokes any revocable (i) disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument . . . .

Mass. Gen. Laws ch. 190B, § 2-804(b).

The statute includes several relevant definitional provisions. First, the term "governing instrument" is defined as a "deed, will, trust, insurance or annuity policy, . . . or a donative, appointive, or nominative instrument of any other type." Id. § 1-201(19) (emphasis added). To be a "governing instrument," an instrument must be "executed by the divorced individual before the divorce or annulment." Id. § 2-804(a)(4) (emphasis added). Second, the phrase "disposition or appointment of property" "includes a transfer of an item of property or any other benefit

- 4 -

to a beneficiary designated in a governing instrument." Id. § 2-804(a)(1). Finally, the term "beneficiary designation" "refers to a governing instrument naming a beneficiary of," inter alia, "an insurance or annuity policy." Id. § 1-201(4).

The Massachusetts Supreme Judicial Court interpreted section 2-804(b) in Parker, 178 N.E.3d 859. "Unless one of the statute's express exceptions applies," Parker noted, a beneficiary designation to a divorced spouse is automatically "revoked as a matter of law" upon divorce. Id. at 866. Parker recognized that section 2-804(b) lists three discrete exceptions. See id. at 866-67, 867 n.8. First, under the "express terms" exception, the "express terms of a governing instrument" (such as a life insurance policy) can "provide that the beneficiary designation is not revoked by divorce or words to that effect." Id. at 869. Second, a court order may maintain the divorced spouse's beneficiary status. See id. at 867 n.8. Third, the "contract exception" provides that the divorcing spouses can retain the beneficiary designation via a "contract relating to the division of the marital estate" (such as a divorce agreement). Id. at 867.

## II.

### A.

When reviewing the entry of judgment on the pleadings under Federal Rule of Civil Procedure 12(c), "we take the well-pleaded facts and the reasonable inferences therefrom in the light

- 5 -

most favorable to the nonmovant." Kando v. R.I. State Bd. of Elections, 880 F.3d 53, 58 (1st Cir. 2018). Our review also "may include facts drawn from documents 'fairly incorporated' in the pleadings and 'facts susceptible to judicial notice.'" Id. (quoting R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006)).

On October 4, 1986, Renee and Joseph were married. In 1996, Joseph purchased a whole life insurance policy (the "Policy"), with a death benefit of $75,000, from Berkshire Life Insurance Company. Joseph named Renee as the primary beneficiary; he named no contingent beneficiaries. Guardian later assumed Berkshire Life Insurance Company's rights and obligations under the Policy.

The Policy stated that upon Joseph's death, the life insurance proceeds would be "paid to the primary beneficiary, if living." If no primary beneficiary survived Joseph, and if, as here, no contingent beneficiaries were listed, then the proceeds would be "paid to [Joseph] or [Joseph]'s estate." Joseph never changed the primary beneficiary designation or named any contingent beneficiaries.

On May 2, 2013, Renee and Joseph divorced. They executed a divorce agreement (the "Divorce Agreement"), which required, inter alia, that the parties acquire or maintain various insurance

policies. As relevant here, paragraph 6 of Exhibit G ("Paragraph 6") included the following agreement about the Policy[1]:

> The Parties acknowledge that the current Whole Life Insurance Policy shall remain in full force and effect and ownership of said policy is with the Husband. The Parties acknowledge that should the Husband elect to cash in said policy that the Wife shall be entitled to one half of the value of said policy at the time of the cashing in of said policy.

Joseph later married Robyn. On December 23, 2020, Joseph died from complications related to COVID-19. Robyn was appointed personal representative of Joseph's estate (the "Estate").

After Joseph's death, Renee submitted a claim to Guardian for the proceeds of the Policy. Renee sent Guardian a copy of the Divorce Agreement, citing Paragraph 6[2] as evidence that she and Joseph intended that she remain the primary beneficiary of the Policy after the divorce. On February 24, 2021, Guardian responded that Paragraph 6 "does not speak to the Policy, . . . nor does it state that [Renee] should be or remain the

---

[1] Guardian disputes whether Paragraph 6 refers to the Policy. But because we "take the well-pleaded facts and the reasonable inferences therefrom in the light most favorable" to Renee, we assume that it does. Kando, 880 F.3d at 58. Indeed, Robyn concedes that the parties have made this assumption on appeal, and the district court found that "paragraph 6 of Exhibit G relates to the whole life insurance policy at issue here." For purposes of this appeal, we need not decide whether any other paragraphs in Exhibit G include references to the Policy.

[2] Renee's attorney erroneously referred to Paragraph 6 as "Paragraph 5," but he quoted the language from Paragraph 6, and Guardian understood the reference as being to Paragraph 6.

beneficiary." Guardian expressed its view that Paragraph 6 was insufficient to save Renee's beneficiary status from the operation of section 2-804(b).

Because Guardian deemed it possible that Renee's beneficiary status was revoked, and because Joseph named no contingent beneficiaries, Guardian concluded that the Estate had a competing claim to the proceeds from the Policy. Guardian contacted Robyn, who eventually filed a competing claim on behalf of the Estate on June 16, 2021.

Before Robyn submitted her claim, Renee initiated suit against Guardian.

**B.**

On March 31, 2021, Renee sued Guardian in Essex County Superior Court. She asserted four claims, all based on Guardian's failure to pay her the proceeds from the Policy: (1) breach of contract; (2) fraudulent misrepresentation of contract; (3) Guardian's acknowledgement of Renee as owner of the Policy; and (4) violation of Massachusetts General Laws Chapter 93A ("Chapter 93A"). Renee sought not only recovery of the Policy proceeds, but also treble damages, punitive damages, and damages for emotional and physical distress.[3]

---

[3]     Renee requested a total of $1.6 million and attorneys' fees.

Guardian invoked diversity jurisdiction[4] and removed the action to the U.S. District Court for the District of Massachusetts. In its answer to Renee's complaint, Guardian asserted a counterclaim for interpleader against Renee, Robyn, and the Estate under Federal Rule of Civil Procedure 22. Guardian noted that Renee and Robyn had "competing claims against Guardian such that it may be exposed to double or multiple liabilities under the Policy" and expressed "indifferen[ce] as to which of the [c]ounterclaim [d]efendants is entitled to the [d]eath [b]enefit under the Policy." Guardian deposited the insurance proceeds into the court registry. It then sought judgment on the pleadings on Renee's claims under Rule 12(c), asked to be discharged from the action, entreated the district court to enjoin Renee and Robyn from suing it with respect to the Policy, and requested attorneys' fees and costs.

Robyn, like Guardian, moved for judgment on the pleadings with respect to the Policy proceeds. She also asserted various crossclaims against Renee. Robyn contended that in addition to improperly seeking the death benefit from the Policy, Renee was also "raid[ing]" Estate assets, including an IRA held by

_____

4    Guardian is a citizen of New York, while Renee, Robyn, and the Estate are all citizens of Massachusetts. The amount in controversy would have exceeded $75,000 even if only the Policy proceeds were at stake: Guardian calculated the value of the death benefit to be $77,118.92.

Joseph at Santander Bank. Robyn asserted five crossclaims: (1) declaratory judgment declaring the Santander IRA and the Policy proceeds to be Estate property; (2) injunctive relief preventing Renee from further dissipating Estate assets; (3) unjust enrichment from the Santander IRA; (4) conversion of funds from the Santander IRA; and (5) breach of the implied covenant of good faith and fair dealing arising from Renee's violations of the Divorce Agreement.

Renee responded with crossclaims of her own. Like Robyn's crossclaims, Renee's crossclaims were not limited to the dispute over the Policy. Renee asserted four crossclaims against Robyn: (1) the Estate's wrongful nonpayment of proceeds from three other insurance policies specified in the Divorce Agreement; (2) Robyn's wrongful receipt of proceeds from those three insurance policies; (3) Robyn's wrongful receipt of Estate assets in contravention of Joseph's will; and (4) the unconstitutionality of section 2-804(b) under the Massachusetts and U.S. Constitutions.

The district court granted Guardian's motion for judgment on the pleadings, based on its reading of section 2-804(b). Concluding that the "governing instrument[] [is] the divorce agreement in this case," the district court purported to apply the statute's "express terms" exception. It found that Paragraph 6 "lack[ed] the required 'express terms'" to prevent application of section 2-804(b). Holding that "there can

- 10 -

be no breach of contract because Renee was not entitled to the funds," the district court granted Guardian's motion as to Renee's breach of contract claim. The court also granted Guardian's motion as to Renee's Chapter 93A claim,[5] reasoning that the court's "resolution of the breach of contract claim necessarily means that Guardian did not commit a 93A violation." The district court discharged Guardian from the action, enjoined Renee and Robyn from suing Guardian with respect to the Policy, and awarded Guardian $5,000 in attorneys' fees and costs.

The district court then granted Robyn's motion for judgment on the pleadings "insofar as it request[ed] judgment in her favor on the interpleader action." The Estate was entitled to the Policy proceeds, the district court explained, because the Policy specified that the death benefit would go to the Estate in the absence of living beneficiaries.

The district court next turned to Robyn's and Renee's crossclaims. First, the court partially denied Robyn's crossclaims as moot to the extent they sought declaratory and injunctive relief with respect to the Policy. The court then dismissed Robyn's other crossclaims for lack of subject matter

_____

[5] The district court also allowed Guardian's motion as to Renee's fraudulent misrepresentation claim and her claim that Guardian acknowledged her ownership of the Policy by accepting a payment from Renee. Renee has not appealed the district court's dismissal of these two claims.

- 11 -

jurisdiction. The court disclaimed jurisdiction over Robyn's crossclaims because, to the extent the crossclaims concerned the Santander IRA and other assets other than the Policy, they were not sufficiently related to the interpleader claim to allow supplemental jurisdiction under 28 U.S.C. § 1367(a).[6]

Finally, the district court dismissed all of Renee's crossclaims for lack of supplemental jurisdiction. Rather than again relying on § 1367(a), the district court purported to apply 28 U.S.C. § 1367(b), which provides that a federal court sitting in diversity cannot exercise supplemental jurisdiction "over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure." Id. Writing that "Renee, a plaintiff, has made a claim against Robyn, a person made a party under Rule 14," the district court dismissed Renee's crossclaims.

Renee timely appealed both (1) the district court's entry of judgment on the pleadings in Guardian's and Robyn's favor, and (2) the district court's dismissal of Renee's crossclaims against Robyn. Robyn has not appealed the district court's dismissal of her crossclaims against Renee.

---

[6]     The court lacked diversity jurisdiction over Robyn's and Renee's crossclaims because Robyn, Renee, and the Estate are all citizens of Massachusetts.

We first address the district court's entry of judgment on the pleadings in favor of Guardian and Robyn with respect to the death benefit from the Policy. For the reasons detailed below, we affirm as to Guardian but vacate and remand as to Robyn.

An entry of judgment on the pleadings is reviewed de novo. Kando, 880 F.3d at 58. We treat a Rule 12(c) motion for judgment on the pleadings similarly to a Rule 12(b)(6) motion to dismiss. See id. "Judgment on the pleadings should be allowed only if the properly considered facts conclusively establish that the movant is entitled to the relief sought." Id. To survive a motion for judgment on the pleadings, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Those factual allegations cannot be "meager, vague, or conclusory." Kando, 880 F.3d at 63 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

The typical interpleader action proceeds in two distinct stages. 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1714 (3d ed. 2022 update); see also, e.g., Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 262 (3d Cir. 2009); Lee v. W. Coast Life Ins. Co., 688 F.3d 1004, 1009 (9th Cir. 2012). In the first stage, the court determines whether the requirements for

interpleader have been met and whether to discharge the stakeholder from further liability to the claimants.  See, e.g., 7 Wright, Miller & Kane, supra, § 1714.  In the second stage, the court adjudicates the respective rights of the claimants to the stake. See, e.g., id.

Here, citing section 2-804(b), the district court entered judgment on the pleadings at both stages of the interpleader action.  At the first stage, the court permitted Guardian to bring the interpleader action, allowed Guardian to deposit the Policy proceeds into the court registry, discharged Guardian from the action, enjoined Renee and Robyn from further suit against Guardian, and awarded Guardian attorneys' fees and costs.  And at the second stage, the court held that the Estate, not Renee, was entitled to the death benefit.  Considering each stage in turn, we affirm as to the first stage but vacate and remand as to the second stage.

**A.**

The district court discharged Guardian from the action on the basis that Renee's claims were meritless due to section 2-804(b).  We disagree, but on de novo review, "we are not bound by the district court's reasoning but, rather, may affirm the entry of judgment on any ground made manifest by the record."  Kando, 880 F.3d at 58.  For the reasons that follow, we affirm the entry of judgment on the pleadings in favor of Guardian.

- 14 -

Under Rule 22, a stakeholder potentially exposed to "double or multiple liability" may ask the court to require the adverse claimants to interplead. Fed. R. Civ. P. 22(a)(1).[7] The purpose of the interpleader rule is to "afford[] a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under [its] control a procedure to settle the controversy and satisfy [its] obligation in a single proceeding." 7 Wright, Miller & Kane, supra, § 1704; see also Hovis, 553 F.3d at 262.

"[T]o support an interpleader action, the adverse claims need attain only 'a minimal threshold level of substantiality.'" Equitable Life Assurance Soc'y of the U.S. v. Porter-Englehart, 867 F.2d 79, 84 (1st Cir. 1989); accord Michelman v. Lincoln Nat'l Life Ins. Co., 685 F.3d 887, 895 (9th Cir. 2012). It is not necessarily the "likelihood of duplicative liability," but rather the "threat of possible multiple litigation," that justifies resort to interpleader. Porter-Englehart, 867 F.2d at 84; see also Lee, 688 F.3d at 1009 (noting that the purpose of an interpleader action "includes limiting litigation expenses, which is not dependent on the merits of adverse claims, only their existence" (quoting Mack v. Kuckenmeister, 619 F.3d 1010, 1024 (9th Cir. 2010))).

---

[7] Interpleader may be sought, as here, by a defendant stakeholder via counterclaim. Fed. R. Civ. P. 22(a)(2).

We agree with the district court that Guardian "acted in good faith by bringing the interpleader claim" due to the risk of exposure to multiple liability under the Policy. Guardian reasonably read the Divorce Agreement as creating ambiguity as to Renee's beneficiary status. Guardian noted that Paragraph 6 did not specifically identify the Policy[8] or explicitly retain Renee as beneficiary. And Guardian's fear of multiple liability was substantiated when Robyn filed a competing claim for the death benefit. Guardian was thus faced with "conflicting claims" of "sufficient substantiality as to make resort to interpleader not merely appropriate, but advisable." Porter-Englehart, 867 F.2d at 91.

Guardian has expressed indifference as to the outcome of the beneficiary dispute and has deposited the Policy proceeds with the court. Typically, "in an interpleader action in which the stakeholder does not assert a claim to the stake, the stakeholder should be dismissed immediately following its deposit of the stake

---

[8]      Renee asserts that the Policy "is the only whole life policy ever purchased by the couple during their marriage" and that the phrase "whole life policy" was "shorthand that the couple knew for purposes of differentiating" the Policy from other insurance policies purchased by the spouses. But she does not explain how Guardian could be expected to know these facts or judge their veracity. Although we assume, for purposes of this appeal, that Paragraph 6 does refer to the Policy, Guardian's uncertainty as to that fact is still relevant to assessing the justifiability of its choice to seek interpleader.

into the registry of the court." Hudson Sav. Bank v. Austin, 479 F.3d 102, 107 (1st Cir. 2007).

Here, however, Renee has sued Guardian for an amount exceeding the value of the death benefit. She contends that Guardian wrongfully instigated the dispute by "[seeking] and encourag[ing] the application for the beneficial interest by [the Estate]." She further argues that Guardian should not be discharged from the action while her breach of contract and Chapter 93A claims remain outstanding.

It is true that a stakeholder who has "acted in bad faith to create a controversy over the stake may not claim the protection of interpleader." Lee, 688 F.3d at 1012; see also, e.g., Hovis, 553 F.3d at 263 ("[A] party seeking interpleader must be free from blame in causing the controversy . . . ." (quoting Farmers Irrigating Ditch & Reservoir Co. v. Kane, 845 F.2d 229, 232 (10th Cir. 1988))); Primerica Life Ins. Co. v. Woodall, 975 F.3d 697, 700 (8th Cir. 2020) ("[I]f the party asserting the right to interpleader[] . . . has acted unfairly to create the underlying conflict necessitating interpleader relief, then that party may not use the interpleader procedure as a shield . . . ."). Here, though, Renee has failed to plausibly allege any bad faith by Guardian. The Divorce Agreement, not Guardian, is responsible for creating the ambiguity as to the beneficiary designation, and Guardian never denied liability under the Policy; Guardian merely

sought to resolve the ambiguity by making Robyn aware of the Estate's potential claim and ultimately seeking interpleader.

It is also true that "where the stakeholder may be independently liable to one or more claimants, interpleader does not shield the stakeholder from . . . liability in excess of the stake."[9] Lee, 688 F.3d at 1011. But such liability must be "truly independent" to prevent dismissal of the stakeholder. Lexington Ins. Co. v. Jacobs Indus. Maint. Co., 435 F. App'x 144, 148 (3d Cir. 2011) (quoting Hovis, 553 F.3d at 264); Berry v. Banner Life Ins. Co., 718 F. App'x 259, 262 (5th Cir. 2018) (quoting Hovis, 553 F.3d at 264). Here, Renee fails to allege any plausible basis for her breach of contract and Chapter 93A claims that is independent from Guardian's decision to seek interpleader. Finding a plausible allegation of independent liability based solely on this choice would be akin to punishing Guardian for the mere "failure to choose between the adverse claimants (rather than bringing an interpleader action)," which "cannot itself be a breach

---

[9] At common law, a stakeholder's independent liability to a claimant prevented the stakeholder from seeking interpleader in the first instance. See 7 Wright, Miller & Kane, supra, § 1706; see also Hovis, 553 F.3d at 264 (discussing the historical evolution of the independent liability bar). The "modern approach," however, is to allow the stakeholder to bring the interpleader action but prevent the stakeholder from being discharged from the action until the independent liability, vel non, is adjudicated. Hovis, 553 F.3d at 264. Because we decide that Guardian is not independently liable to Renee and should be discharged from the action, we need not decide which procedural practice should be used generally.

- 18 -

of a legal duty." Hovis, 553 F.3d at 265; see also id. at 264 (finding that the insurer's "failure to resolve its investigation in [one claimant's] favor" did not suffice to show independent liability); Berry, 718 F. App'x at 262-63 (rejecting claim for breach of duty of good faith and fair dealing for same reason); Porter-Englehart, 867 F.2d at 91 (rejecting Chapter 93A claim on similar facts).[10]

Siegel v. Berkshire Life Insurance Co., 835 N.E.2d 288 (Mass. App. Ct. 2005), cited by Renee in support of her claims against Guardian, does not affect our analysis. In Siegel, which involved neither interpleader nor section 2-804(b), an insurer violated Chapter 93A by refusing to transfer policy ownership pursuant to an assignment by the previous owner. Id. at 289-91. That violation was due, in part, to several unfair practices perpetrated by the insurer, see id. at 290, among which was the insurer's "unreasonable reading of the policy," id. at 291. Here, in contrast, Renee has identified no unfair practices by Guardian

---

[10] The Ninth Circuit faced similar facts in Michelman v. Lincoln National Life Insurance Co. There, one claimant sued the insurer for breach of contract and a violation of Washington consumer protection law. 683 F.3d at 891-92. The insurer then filed a counterclaim for interpleader. Id. at 891. The Ninth Circuit held that the insurer's acknowledgement of liability, "prompt[] deposit[]" of the proceeds with the district court, and "good faith decision to interplead" protected it from the plaintiff's claims, id. at 899, because there was nothing in the record to support the view that the claimant's legal claims were "independent of [the insurer's] ultimate coverage decision," id. at 892.

independent of its choice to pursue interpleader, and we find that the Divorce Agreement was ambiguous, thus rendering Guardian's resort to interpleader reasonable.[11]

We affirm the district court's entry of judgment on the pleadings in favor of Guardian, the court's discharge of Guardian from the action, its order enjoining Renee and Robyn from suing Guardian with respect to the Policy proceeds, and its award of attorneys' fees to Guardian.

## B.

Turning to the second stage of the interpleader action, the district court entered judgment on the pleadings in favor of Robyn. The court found the Divorce Agreement insufficient to counteract section 2-804(b), so it held that the Estate was entitled to the death benefit. We vacate and remand.

The district court erroneously reasoned that the Divorce Agreement was a "governing instrument" under section 2-804(b). It thus purported to apply the statute's "express terms" exception, Parker, 178 N.E.3d at 869, which provides that the "express terms of a governing instrument" can avert the automatic revocation of

---

[11] We do not hold that a stakeholder can always escape liability from suit by seeking interpleader via counterclaim. See Hovis, 553 F.3d at 265 ("[T]he interpleader device . . . [is not] an all-purpose get-out-of-jail free card."). Our analysis might differ, for example, if the Divorce Agreement had explicitly referenced the Policy and unambiguously retained Renee as the beneficiary. In such a scenario, an insurer may be at fault for refusing to fulfill an unambiguous claim.

a beneficiary designation, Mass. Gen. Laws ch. 190B, § 2-804(b). Writing that "[s]uch express language is absent" from the Divorce Agreement, the district court held that Renee had failed to satisfy the express terms exception.

The Divorce Agreement cannot, however, be the "governing instrument." Under the statute, a "governing instrument" is the document that creates the "disposition or appointment of [the] property" arguably being revoked by divorce. Mass. Gen. Laws ch. 190B, § 2-804(b)(1)(i); see also id. § 2-804(a)(1) (defining a "disposition or appointment of property" as "includ[ing] a transfer of an item of property or any other benefit to a beneficiary designated in a governing instrument" (emphasis added)). A "governing instrument" can be an "insurance or annuity policy," id. § 1-201(19), and must be "executed by the divorced individual before the divorce or annulment," id. § 2-804(a)(4) (emphasis added). In this case, the Policy -- not the Divorce Agreement -- is the governing instrument.

Parker makes clear that section 2-804(b) has three discrete exceptions: the "express terms" exception, the court order exception, and the "contract exception." 178 N.E.3d at 866-67, 869. Because the Policy contains no language, express or

otherwise, that maintains the beneficiary designation after divorce,[12] the express terms exception is not implicated here.

Rather, we must analyze the language of Paragraph 6 under the contract exception, because the Divorce Agreement is a "contract relating to the division of the marital estate made between the divorced individuals before or after the . . . divorce."[13]  Mass. Gen. Laws ch. 190B, § 2-804(b).

Applying the contract exception, we ask whether the Divorce Agreement -- and in particular, Paragraph 6 -- saves Renee's beneficiary status from revocation.  Ordinary principles of contract interpretation apply.  See Parker, 178 N.E.3d at 867-69 (analyzing the contract exception through the lens of ordinary contract law, without any requirement of "express terms").  We

---

[12]  Indeed, no party argues that the Policy includes such language.  The district court's application of the express terms exception rested solely on its mistaken belief that the Divorce Agreement was a "governing instrument" under the statute.  Because we do not address the express terms exception here, we need not decide whether the language of Paragraph 6, had it been incorporated in the Policy rather than the Divorce Agreement, would constitute an "express[] provi[sion] that the beneficiary designation is not revoked by divorce or words to that effect," as is required under the express terms exception.  Parker, 178 N.E.3d at 869.

[13]  Renee notes that the Divorce Agreement was "part of the court order of divorce."  Because we determine that Renee has plausibly alleged that she remains the beneficiary under the contract exception, we need not determine whether the court order exception also applies.

find that Renee has plausibly alleged that Paragraph 6 satisfies the contract exception.

Paragraph 6 provides that the Policy "shall remain in full force and effect" with Joseph remaining as its owner. It further states that should Joseph "elect to cash in said policy," Renee "shall be entitled to one half of the value of said policy at the time of the cashing in." Renee and Robyn present different theories about the intent behind this language. Renee argues that "the reference in [Paragraph 6] is only there for the purpose of [preventing] revocation on divorce." Robyn posits that Paragraph 6 aims only to "maintain th[e] asset value" of the Policy and provide that "if [the Policy] is sold, . . . then [Renee] is entitled to half."

Under ordinary contract law principles, we find that Paragraph 6 is at least ambiguous, and that Renee's interpretation is a plausible one. The phrase "full force and effect" commonly is used in contracts to specify that no changes may be made to the referenced document. Massachusetts courts have recognized as much with respect to beneficiary designations, albeit typically with respect to contracts containing clearer language than that contained in Paragraph 6. See, e.g., Foster v. Hurley, 826 N.E.2d 719, 721, 725-26 (Mass. 2005) (finding, where ex-wife agreed to maintain unnamed insurance policies in "full force and effect" with ex-husband as beneficiary, that ex-wife could not later change

- 23 -

beneficiary designation); Metro. Life Ins. Co. (MetLife Grp.) v. Garron, No. 2018-00001, 2019 WL 7708852, at *1-2, *5 (Mass. Super. Ct. Nov. 8, 2019) (holding, where ex-husband agreed to maintain life insurance in "full force and effect" with ex-wife as beneficiary, that ex-husband could not later unilaterally change the beneficiary designation).  Paragraph 6 fails to explicitly name Renee as the continuing beneficiary, but we cannot say, at the Rule 12(c) stage, that the phrase "full force and effect" cannot plausibly have been intended to retain the beneficiary designation.  Cf. Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 22 (1st Cir. 2006) (finding the phrase "full force and effect" to be "unqualified language" that is "broad in its terms").

Robyn counters that Paragraph 6 was meant to "maintain th[e] asset value" of the Policy and lay out the terms of its potential future equitable division.  But even accepting that premise, it would nonetheless be plausible that the agreement could be construed as evidencing an intent that Renee retain an enduring interest in the Policy after the divorce -- including, potentially, as a beneficiary.  It would make little sense, after all, for Renee to negotiate the maintenance and potential division of an asset to which she would have no claim.  Simply put, nothing in the interpretation asserted by Robyn, and certainly nothing in the language of Paragraph 6 itself, unambiguously forecloses the possibility that Paragraph 6 retained Renee's beneficiary status.

Our holding does not conflict with Parker. In Parker, the separation agreement "omitted any discussion of insurance policies even though the [spouses] were invited to include them." 178 N.E.3d at 868. The court thus determined that the contract exception did not apply because there was "no contractual agreement to continue [the ex-wife] as the beneficiary of [the ex-husband's] insurance policy." Id. Here, in contrast, the Divorce Agreement included specific reference to the Policy. Paragraph 6 provides sufficient basis for Renee to plausibly allege that the contract exception prevented revocation of her beneficiary status.[14]

We vacate the district court's entry of judgment on the pleadings in favor of Robyn with respect to the Policy proceeds, and remand for the district court to resume the second stage of the interpleader action.

**IV.**

We now turn to the various crossclaims asserted by Robyn and Renee against one another, all of which were denied or dismissed by the district court. The district court denied Robyn's

---

[14] The contract exception was deemed satisfied in Thrivent Financial for Lutherans v. Warpness, No. 16-CV-1321, 2017 WL 2929521, at *4 (E.D. Wis. July 10, 2017). There, though, the separation agreement "explicitly required [the ex-husband] to maintain life insurance . . . naming [the ex-wife] as the beneficiary." Id. (emphasis added). The outcome of the present case thus cannot be resolved by either Parker or Warpness. It is precisely this ambiguity which allowed Guardian to bring its interpleader action in good faith.

- 25 -

crossclaims as moot to the extent they requested relief related to the Policy proceeds. All other crossclaims were dismissed for lack of supplemental jurisdiction.

The district court's denial of crossclaims as moot is reviewed de novo. See Town of Portsmouth v. Lewis, 813 F.3d 54, 58 (1st Cir. 2016). We review the district court's decision not to exercise supplemental jurisdiction over state law claims for abuse of discretion. Massó-Torrellas v. Mun. of Toa Alta, 845 F.3d 461, 465 (1st Cir. 2017).

We first address Robyn's crossclaims and then discuss Renee's. As to both sets of crossclaims, we affirm in part and vacate in part.

**A.**

Because the district court granted judgment on the pleadings in favor of Robyn on the interpleader action, it denied Robyn's crossclaims as moot to the extent they sought declaratory and injunctive relief related to the Policy proceeds. Because we vacate the entry of judgment on the pleadings, we vacate the denial of Robyn's related crossclaims, which are no longer moot. See, e.g., Banque Paribas v. Hamilton Indus. Int'l, Inc., 767 F.2d 380, 386 (7th Cir. 1985) ("Since the finding of mootness is based on an order . . . that we are reversing, the order dismissing the cross-claim must also be reversed.").

- 26 -

The district court dismissed the remainder of Robyn's crossclaims for lack of supplemental jurisdiction under 28 U.S.C. § 1367(a). Robyn does not appeal this dismissal, and rightly so. The district court was within its discretion in finding that the crossclaims relating to the Santander IRA and other assets did not "derive from a common nucleus of operative fact" with the interpleader action concerning the Policy, as is required under § 1367(a). Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC, 730 F.3d 67, 72 (1st Cir. 2013) (quoting Penobscot Indian Nation v. Key Bank of Me., 112 F.3d 538, 564 (1st Cir. 1997)).

We thus vacate the district court's denial of Robyn's crossclaims as moot to the extent they concern the Policy proceeds, but affirm the dismissal of Robyn's other crossclaims.

### B.

The district court dismissed all of Renee's crossclaims for lack of supplemental jurisdiction. The court purported to apply 28 U.S.C. § 1367(b), which provides that a federal court sitting in diversity cannot exercise supplemental jurisdiction "over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure." Id. Writing that "Renee, a plaintiff, has made a claim against Robyn, a person made a party under Rule 14," the district court held that

§ 1367(b) barred Renee's crossclaims. Renee appeals this dismissal.

The district court's application of § 1367(b) was an abuse of discretion because Robyn was made party under Rule 22, not Rule 14. Compare Fed. R. Civ. P. 14 (governing third-party impleader and typically involving claims for indemnification), with Fed. R. Civ. P. 22 (governing interpleader). And because § 1367(b) is "limited to claims joined under [Rules] 14, 19, 20, or 24, . . . Rule 22 interpleader claims [do] not fall within that prohibition." 7 Wright, Miller & Kane, supra, § 1710; see also id. § 1708 (noting that interpleader claims are "not . . . properly brought under [Rule] 14(a)").[15]

Nevertheless, we "have an obligation to inquire into our subject matter jurisdiction sua sponte." One & Ken Valley Hous. Grp. v. Me. State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013). To the extent Renee's crossclaims concern the Santander IRA and other assets other than the Policy, we find that supplemental jurisdiction is lacking under § 1367(a), for the same reason that

---

[15] Because we remand for the district court to conduct the second stage of the interpleader action, the district court's statement that it would decline jurisdiction under 28 U.S.C. § 1367(c) due to having "dismissed all claims over which it ha[d] original jurisdiction" is no longer applicable. Further, invocation of § 1367(c) on remand "would be totally inconsistent with the policies underlying the federal interpleader remedy." 7 Wright, Miller & Kane, supra, § 1710. On remand, Renee and Robyn must be allowed to press their adverse claims to the Policy proceeds, including via crossclaim.

the district court found it absent for some of Robyn's crossclaims. Section 1367(a) provides for supplemental jurisdiction over only those claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). To satisfy this standard, claims must "derive from a common nucleus of operative fact" with the claim satisfying original jurisdiction. Allstate Interiors & Exteriors, 730 F.3d at 72 (quoting Penobscot Indian Nation, 112 F.3d at 564). As the district court noted, the disputes over the Santander IRA and other assets do not relate to the interpretation of Paragraph 6 or the disposition of the interpleader action.[16]

We thus vacate the district court's dismissal of Renee's crossclaims to the extent they concern the Policy proceeds, but affirm the dismissal of Renee's other crossclaims.

## V.

For the foregoing reasons, we affirm (1) the entry of judgment on the pleadings in favor of Guardian on the interpleader action; (2) the discharge of Guardian from the action; (3) the order enjoining Renee, Robyn, and the Estate from suing Guardian further with respect to the Policy; (4) the award of attorneys'

---

[16] Renee's other arguments for jurisdiction are insufficiently developed and thus waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

fees to Guardian; (5) the dismissal of Robyn's crossclaims to the extent they do not concern the Policy proceeds; and (6) the dismissal of Renee's crossclaims to the extent they do not concern the Policy proceeds. We <u>vacate</u> (1) the entry of judgment on the pleadings in favor of Robyn and the Estate on the interpleader action; (2) the dismissal of Robyn's crossclaims to the extent they concern the Policy proceeds; and (3) the dismissal of Renee's crossclaims to the extent they concern the Policy proceeds.

All parties shall bear their own costs on appeal.