# United States Court of Appeals
## For the First Circuit

No. 24-1154

RENEE SEVELITTE,

Plaintiff, Appellant,

v.

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,

Defendant,

ROBYN A. CAPLIS-SEVELITTE, personal representative of the Estate
of Joseph F. Sevelitte,

Third Party Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

---

Before

Gelpí, Lynch, and Montecalvo, Circuit Judges.

---

William K. Fitzgerald, with whom the Law Office of W. Kevin
Fitzgerald was on brief, for appellant.
Joshua N. Garick, with whom the Law Offices of Joshua N.
Garick P.C. was on brief, for appellee.

---

December 12, 2024

---

**MONTECALVO, Circuit Judge.** Appellant Renee Sevelitte appeals from the district court's decision granting summary judgment to the Estate of Joseph F. Sevelitte, Renee's former husband ("the Estate"). Renee and the Estate have long disputed who is entitled to the proceeds of a life insurance policy that Joseph bought during his marriage to Renee. At the heart of the dispute is a Massachusetts law that automatically revokes a spouse's beneficiary status at the time of divorce. See Mass. Gen. Laws ch. 190B, § 2-804(b) ("section 2-804(b)"). The relevant portion of section 2-804(b) provides:

> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage:
>     (1) revokes any revocable (i) disposition or appointment of property made by a divorced individual to the individual's former spouse in a governing instrument . . . .

Mass. Gen. Laws ch. 190B, § 2-804(b).

As we explained when this case was last before us, section 2-804(b) contains three exceptions:

> First, under the "express terms" exception, the "express terms of a governing instrument" (such as a life insurance policy) can "provide that the beneficiary designation is not revoked by divorce or words to that effect." Second, a court order may maintain the divorced spouse's beneficiary status. Third, the "contract exception" provides that the

- 2 -

> divorcing spouses can retain the beneficiary
> designation via a "contract relating to the
> division of the marital estate" (such as a
> divorce agreement).

Sevelitte v. Guardian Life Ins. Co. of Am., 55 F.4th 71, 76 (1st Cir. 2022) (quoting Am. Fam. Life Assurance Co. of Columbus v. Parker, 178 N.E.3d 859, 866-67, 867 n.8, 869 (Mass. 2022)). "Unless one of the statute's express exceptions applies, the beneficiary designation to . . . the divorced spouse[] [is] revoked as a matter of law." Parker, 178 N.E.3d at 866.

All parties agree that section 2-804(b) applies to the life insurance policy, which designates Renee as the beneficiary. They disagree, however, whether one of the exceptions "saves" Renee's status as beneficiary despite her divorce from Joseph. Below, the district court determined that Renee could not establish that any of the exceptions applied and thus granted summary judgment to the Estate. We now consider Renee's arguments that this was in error and affirm the district court's decision.

## I. Background

### A. Facts

Renee married Joseph in 1986. A year later, the two had a son. In 1996, Joseph purchased a life insurance policy, described in the policy as an "ordinary life policy," from The

Guardian Life Insurance Company of America ("Guardian")[1] with a death benefit of $75,000, naming Renee as the sole beneficiary ("Guardian Policy"). The Guardian Policy also provides that if no beneficiary survived Joseph, proceeds would be paid to his estate. The Guardian Policy does not address the effect of divorce on beneficiary status. At no point did Joseph amend the beneficiary designation.

In 2013, Renee and Joseph executed a divorce agreement (the "Divorce Agreement"), which the probate court approved. The Divorce Agreement includes a section titled "Life Insurance." Three paragraphs within that section are relevant here. First, Paragraph 1 provides:

> In order to secure his obligations contained in this Agreement against the eventuality of his death, [Joseph] agrees that until the termination of his support obligations hereunder, [he] shall obtain and/or maintain life insurance policies with a death benefit of not less than One Hundred Thousand ($100,000) Dollars. The life insurance policy shall name [Renee] as Trustee for [their son] as the beneficiary.

Thus, Paragraph 1 secured Joseph's child-support obligations.

Second, Paragraph 5 provides: "[t]he Parties acknowledge that the Mortgage Insurance/Life Insurance policy on the marital home shall stay in full force and effect." The beneficiary of the

---

[1] Formerly, and at the time of purchase, Berkshire Life Insurance Company ("Berkshire").

mortgage insurance/life insurance policy was the mortgage lender, ensuring that the mortgage would be paid off in the event of Joseph's death.

Third, Paragraph 6 provides:

> The Parties acknowledge that the current Whole Life Insurance Policy shall remain in full force and effect and ownership of said policy is with [Joseph].  The Parties acknowledge that should [Joseph] elect to cash in said policy that [Renee] shall be entitled to one half of the value of said policy at the time of the cashing in of said policy.

The Divorce Agreement does not include any definition, description of, or other reference to "the current Whole Life Insurance Policy."

In 2015, Renee and Joseph executed a modification of the Divorce Agreement (the "Modification").  The original agreement did not provide for any alimony, but per the Modification Joseph began weekly alimony payments.  The Modification also provides that "[s]o long as Joseph is required to pay alimony, he shall maintain his current life insurance policy on his life that he has through his employer, American Fruit, with a death benefit of $50,000 with Renee as the beneficiary."  This secured his alimony obligations.

In 2016, Joseph married Robyn Caplis-Sevelitte.  In early 2020, Joseph executed a will, naming Robyn as the personal

representative of the Estate. In December of the same year, Joseph passed away.

In January 2021, Renee submitted a claim on the Guardian Policy, listing herself as Joseph's "spouse." As part of the claim process, she provided Guardian with the Divorce Agreement and the Modification. In February, Guardian sent Renee a letter explaining that there was "nothing in the documents provided that would negate the impact of Massachusetts' revocation statute." The letter specifically noted that Paragraph 6 of the Divorce Agreement did not mention Guardian or Berkshire specifically and, further, assuming the "Whole Life Insurance Policy" referred to the Guardian Policy, it did not state that Renee "should be or remain the beneficiary."

"Because Guardian deemed it possible that Renee's beneficiary status was revoked, and because Joseph named no contingent beneficiaries, Guardian concluded that the Estate had a competing claim to the proceeds from the Policy." Sevelitte, 55 F.4th at 77. Thus, in March of 2021, "Guardian contacted Robyn, who eventually filed a competing claim on behalf of the Estate." Id.

## B. Procedural History

Given the nature of Renee's claims, we set forth the procedural history of this case in detail, including our decision in Renee's earlier appeal.

## 1. Pleadings and Early Motions

Before Robyn submitted her claim on behalf of the Estate, Renee sued Guardian, asserting various claims, all based on Guardian's failure to pay her the proceeds from the Guardian Policy. In answering, Guardian explained that Renee and the Estate had "competing claims" to the Guardian Policy and that therefore it could not make payment on the Guardian Policy. Thus, it sought to interplead Robyn as the personal representative of the Estate and asked that the court "determine to whom said benefits should be paid."

Guardian then sought judgment on the pleadings on Renee's claims under Rule 12(c). The Estate also sought judgment on the pleadings, asserting that it was entitled to the proceeds of the Guardian Policy.[2]

The district court addressed the two motions for judgment on the pleadings in a single order: it granted Guardian's motion, concluding that Guardian was not liable to Renee, and

---

[2] Once brought into the case, the Estate filed several crossclaims against Renee, arguing that, among other things, the Estate was entitled to the Guardian Policy proceeds. In response, Renee filed her own counterclaims against both Robyn and the Estate, including claims under the Divorce Agreement and claims that Robyn had tortiously interfered with Renee's contract claims. The Estate moved to dismiss these claims for lack of subject-matter jurisdiction. The court granted the motion and dismissed Renee's counter-claims without prejudice.

granted the Estate's motion solely on the question of who was entitled to the Guardian Policy proceeds.

In addressing section 2-804(b), the district court looked at the express terms exception, found that the Divorce Agreement was a "governing" document under the statute, and held that the Divorce Agreement lacked the express terms necessary to prevent automatic revocation. In turn, the district court concluded that the Estate, rather than Renee, was entitled to the funds, discharged Guardian from the action, and awarded the Guardian Policy proceeds to the Estate. Renee appealed, arguing that the district court erred in awarding the Estate the Guardian Policy proceeds on a Rule 12(c) motion.

### 2. First Appeal

On review, we "vacate[d] and remand[ed] for further proceedings to determine who [was] entitled to the death benefit."[3] Sevelitte, 55 F.4th at 75. We first noted that a divorce agreement was not a governing instrument because "a 'governing instrument' is the document that creates the 'disposition or appointment of [the] property' arguably being revoked by divorce" (e.g., "an 'insurance or annuity policy'") and "must be 'executed by the divorced individual before the divorce or annulment.'" Id. at

---

[3] Renee also appealed the district court's discharge of Guardian, and we affirmed. Sevelitte v. Guardian Life Ins. Co. of Am., 55 F.4th 71, 75 (1st Cir. 2022).

82-83 (first quoting Mass. Gen. Laws ch. 190B, § 2-804(b)(1)(i), then quoting id. § 1-201(19), and then quoting id. § 2-804(a)(4) (alteration in original)).  We then explained that the first of the three exceptions -- the express terms exception -- "[wa]s not implicated" because the governing document, the Guardian Policy, lacked any language (explicit or otherwise) that would maintain Renee's beneficiary designation post-divorce.  Id. at 83.

We then turned to the contract exception and considered whether the Divorce Agreement "save[d] Renee's beneficiary status from revocation."  Id.  There, we concluded that "Renee ha[d] plausibly alleged that Paragraph 6 [of the Divorce Agreement -- which stated that the policy shall remain in full force and effect --] satisfie[d] the contract exception."  Id.

Because of the case's procedural posture, we assumed as true Renee's allegation that the term "Whole Life Insurance Policy" referred to the Guardian Policy.  Id. at 77 n.1.  Next, we explained that Paragraph 6 was "at least ambiguous" and that both Renee and the Estate had presented plausible interpretations of the meaning of "full force and effect" -- Renee argued that "the reference in Paragraph 6 is only there for the purpose of preventing revocation on divorce," while "the Estate posited that Paragraph 6 aims only to 'maintain the asset value' of the [Whole Life Insurance] Policy and provide that 'if the [Whole Life Insurance] Policy is sold, then Renee is entitled to half.'"  Id. at 83 (cleaned up).

In considering Renee's argument, we addressed Massachusetts law on the meaning of the phrase "full force and effect," noting that the term is common "in contracts to specify that no changes may be made to the referenced document" and that "Massachusetts courts have recognized as much with respect to beneficiary designations, albeit typically with respect to contracts containing clearer language than that contained in Paragraph 6." Id. (first citing Foster v. Hurley, 826 N.E.2d 719, 721, 725-26 (Mass. 2005) (concluding that separation agreement in which ex-wife agreed to maintain unnamed insurance policies in "full force and effect" with ex-husband "as primary beneficiary" maintained beneficiary designation), and then citing Metro. Life Ins. Co. (MetLife Grp.) v. Garron, No. 2018-00001, 2019 WL 7708852, at *1-2, *5 (Mass. Super. Ct. Nov. 8, 2019) (holding, where ex-husband agreed to maintain life insurance in "full force and effect" with ex-wife as beneficiary, that ex-husband could not later unilaterally change the beneficiary designation)).

Thus, we concluded that, though "Paragraph 6 fails to explicitly name Renee as the continuing beneficiary," we could not "say, at the Rule 12(c) stage, that the phrase 'full force and effect' cannot plausibly have been intended to retain the beneficiary designation." Id. at 84. We also explained that even if we read Paragraph 6 as the Estate wished:

> [I]t would nonetheless be plausible that the agreement could be construed as evidencing an intent that Renee retain an enduring interest in the [Whole Life Insurance] Policy after the divorce -- including, potentially, as a beneficiary. It would make little sense, after all, for Renee to negotiate the maintenance and potential division of an asset to which she would have no claim.

Id.

Accordingly, we vacated the district court's determination that the Estate was entitled to the Guardian Policy proceeds and returned the case to district court.

### 3. Discovery and Summary Judgment

After our mandate issued, the district court entered a discovery and dispositive motion scheduling order. Days later, Renee filed a motion for judgment on the pleadings, arguing that this court had "affirm[ed] [her] rights to the [Guardian Policy] proceeds" and that the district court had to award her those proceeds. The district court denied the motion. Several days later, Renee filed a purported motion for summary judgment, again arguing that our decision in Sevelitte dictated that she was entitled to the proceeds. The district court denied her motion and noted that, in its view, the matter "require[d] discovery and then resolution on a summary judgment motion or at trial." The district court then explained that Renee would be permitted to refile her motion immediately (but then file no more dispositive motions without showing good cause as to the need for multiple

- 11 -

dispositive motions) or wait until the close of discovery. Notwithstanding the district court's direction, over the following months, Renee proceeded to file various motions (for judgment on partial findings, for summary judgment, and for judgment on the pleadings), all asserting that Sevelitte mandated her victory. The district court denied all Renee's motions either for violating its earlier order or for failing to follow the Local Rules.

The Estate proceeded to conduct discovery, serving discovery requests and deposing Renee. Renee did not conduct discovery. Instead, she stated that she "did not wish to spend resources frivolously" and "[t]he documents and decisions of the Courts in this matter speak for themselves." At the close of discovery, per the scheduling order, the Estate moved for summary judgment. Renee opposed the motion but did not, in any way, respond to the Estate's "Statement of Undisputed Facts"; she provided limited argument and virtually no factual or legal support for her position.

In its summary judgment motion, the Estate argued that the Divorce Agreement did not satisfy the contract exception, pointing to evidence to support its contention that Renee and Joseph did not intend to retain Renee's beneficiary status post-divorce. Along with the relevant documents already discussed, the Estate submitted the affidavit of Valerie Ross, the attorney who represented Joseph in his divorce from Renee (in both

the initial divorce proceedings and the later modification proceedings), and a report from Susan DeMatteo, an expert in Massachusetts matrimonial and divorce law, specializing in marriage separation agreements.

Ross averred that she and Renee's attorney knew that they needed to expressly name Renee as a continued beneficiary in Paragraph 6 for her to remain as the beneficiary post-divorce, pointing out that the Divorce Agreement expressly designated Renee as the beneficiary under the policy described in Paragraph 1. She also explained that the Divorce Agreement did not expressly name Renee as continued beneficiary in Paragraph 6 because the Whole Life Insurance Policy was listed for its asset value only -- if Joseph elected to cash in that policy, then Renee would get half.

Ross also referenced the divorce negotiations as they related to Paragraph 6, explaining that Renee initially sought the addition of Paragraph 6, proposing language that would give her ownership of the Whole Life Insurance Policy and the ability to "obtain the cash surrender value of the whole life policy, not the death benefits." Ross explained, however, that the negotiations ultimately retained Joseph as owner and gave him the discretion to cash in the Whole Life Insurance Policy early, with Renee entitled to a portion of that value if he so elected. Ross also pointed to the life insurance provision in the Modification as an example of how she and Renee's attorney understood that they had to "expressly

name[] Renee as the beneficiary" to maintain her status as beneficiary.

In DeMatteo's report, she explained that, without payment of any death benefit to Renee from any life insurance policy, the Divorce Agreement allocated sixty percent of the marital assets to Renee and that "it [was] unlikely that an agreement requiring the payment of additional life insurance death benefits, over and beyond the disproportionate division of assets called for in the Divorce Agreement, would have obtained judicial approval." She added that, in her expert opinion, "Renee was only entitled to receive a portion of the cash surrender value [of the policy described in Paragraph 6] if cashed in by Joseph." She went on to explain that divorce judgments generally designate spouses as beneficiaries of insurance policies to secure pending financial obligations (e.g., child support or alimony), pointing to Paragraph 1 of the Divorce Agreement and the Modification as examples because both described insurance policies to secure Joseph's child support and alimony obligations, respectively. Finally, DeMatteo explained that the term "full force and effect," as used in Paragraph 6, "means only that the policy will not be terminated and did not mean that Renee's beneficiary status was retained."

In opposing the Estate's motion, Renee mainly contended that this court, in Sevelitte, had determined that the Divorce Agreement entitled her to the Guardian Policy proceeds.

The district court granted summary judgment to the Estate. It explained that only the Estate had presented evidence to support its argument as to the meaning of Paragraph 6[4] and that Renee did not introduce any contrary evidence. Thus, the district court concluded that she had failed to demonstrate there was a genuine dispute as to the intended meaning of Paragraph 6. The district court therefore entered judgment for the Estate on its claim that it was entitled to the proceeds of the Guardian Policy and awarded those proceeds to the Estate. Renee timely appealed.

## II. Standard of Review

We review the district court's grant of summary judgment de novo. Mullane v. U.S. Dep't of Just., 113 F.4th 123, 130 (1st Cir. 2024). In so doing, "we must construe the evidence 'in the light most congenial to the nonmovant,' and will affirm the grant of summary judgment where the record 'presents no genuine issue as to any material fact and reflects the movant's entitlement to

---

[4] The Estate also argued that Renee could not establish that the term "Whole Life Insurance Policy," as used in Paragraph 6, referred to the Guardian Policy. The court did not decide that issue and, instead, assumed that Paragraph 6 did refer to the Guardian Policy but expressed doubt that Renee "would be able to prove [that] at a trial."

- 15 -

judgment as a matter of law.'" Id. (quoting McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017)).

### III. Discussion

Renee continues to maintain on appeal, as she did in the district court, that Sevelitte held that the Divorce Agreement satisfies section 2-804(b)'s contract exception. At its core, her position is that it has been established as a matter of law that Paragraph 6 of the Divorce Agreement prevents section 2-804(b)'s automatic revocation.[5]

Renee's arguments demonstrate a fundamental misunderstanding of our decision in Sevelitte and her obligations as a plaintiff. First, our decision did not determine that the Divorce Agreement satisfied section 2-804(b)'s contract exception. It merely determined that it was plausible that Renee and Joseph intended Paragraph 6 to prevent automatic revocation (and thus that it was plausible that the contract exception applied) and that it was also plausible that Paragraph 6 was not meant to address revocation at all (and thus plausible that the exception did not apply). See Sevelitte, 55 F.4th at 83. In other words,

---

[5] To the extent Renee argues that she need only show that the Divorce Agreement is a contract relating to the division of marital assets to establish that the section 2-804(b) exception applies, we reject any such argument. For the exception to apply, the contract must, by its terms, "retain the beneficiary designation." Sevelitte, 55 F.4th at 76 (citing Am. Fam. Life Assurance Co. of Columbus v. Parker, 178 N.E.3d 859, 867 (Mass. 2022)). There were no such terms here.

- 16 -

we held that Renee had done enough to proceed to the next phase of litigation: discovery and dispositive motions. We did not dispense with Renee's obligation to prove her case.

To reiterate, in Sevelitte we explained that Paragraph 6's terms were ambiguous, id., because its "phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken," Bank v. Int'l Bus. Machs. Corp., 145 F.3d 420, 424 (1st Cir. 1998) (quoting Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995)). More specifically, it was unclear whether Paragraph 6 was intended to maintain the existence of the policy itself (with the possibility that, if Joseph cashed in the policy during his life, Renee would get a share) or to maintain Renee's status as the beneficiary despite the divorce. Thus, when the case returned to the district court, the remaining question was whether any evidence could support either side's understanding of Paragraph 6. Given the evidence the Estate put forth to support its understanding, in order to survive summary judgment Renee was obligated to present some evidence or argument to suggest that she and Joseph intended to maintain her beneficiary status. As she has not done so, she cannot prove that she is entitled to the proceeds of the Guardian Policy.[6]

---

[6] The Estate again argues that Renee cannot show that "the Whole Life Insurance Policy" refers to the Guardian Policy, but we

Generally, "if [a] contract's terms are ambiguous, contract meaning normally becomes a matter for the factfinder, and summary judgment is appropriate only if the extrinsic evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 784 (1st Cir. 2011) (quoting Bank, 145 F.3d at 424). As the district court explained, this is one such case.

Ross's affidavit[7] and DeMatteo's report together support the Estate's position that Renee and Joseph did not intend to retain Renee's status as the beneficiary of the Guardian Policy. See id. Those two documents make clear that Renee and Joseph, through their attorneys, understood that the only way to retain beneficiary status post-divorce was to explicitly state that purpose; that the term "full force and effect" had the simple effect of maintaining the existence of the described policy; and

assume that it does because the outcome would not change: the Estate has demonstrated that even so no jury could conclude that Renee and Joseph intended to retain Renee's beneficiary status under the Guardian Policy.

[7] In her brief, Renee suggests that Ross's affidavit was "not discoverable," and, in her reply, she argued for the first time that the affidavit included inadmissible hearsay. Both arguments are waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); United States v. Toth, 33 F.4th 1, 19 (1st Cir. 2022) ("New arguments . . . may not be made in reply briefs.").

- 18 -

that Paragraph 6 had the effect of giving Renee an interest in the policy proceeds only if Joseph cashed in the policy during his life. The Estate's evidence also reasonably suggests that Renee's theory of Paragraph 6's meaning would likely have resulted in the Divorce Agreement being rejected by the probate court[8] and would have been highly unusual as it would not have secured any obligation Joseph had under the Divorce Agreement. Finally, Renee and Joseph intended for Paragraph 6 to only give Renee an interest in the Guardian Policy if Joseph were to cash the policy in during his life.

Renee has offered nothing to undermine or contradict the Estate's position or evidence. Thus, because the record contains only the Estate's evidence as to Paragraph 6's intended meaning, no reasonable person could find that Renee and Joseph intended to save Renee's beneficiary status from revocation. Though Renee "disputes" Paragraph 6's meaning, that dispute is not genuine as she has presented no evidence to support her argument. See French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (At summary judgment,

---

[8] Renee seeks to undercut DeMatteo's assessment that such a provision would be unfair by pointing to the assessed value of a second home that Joseph retained post-divorce, arguing that Paragraph 6 was meant to balance his retention of the property. Yet, as she conceded during oral argument, she has never submitted any evidence of that home's value. In any event, DeMatteo considered the entire division of assets set out in the Divorce Agreement in reaching her conclusion, and Joseph's retention of the second home is memorialized in the Divorce Agreement.

a dispute is genuine when a fact "is disputed such that 'a reasonable jury could resolve the point in favor of the non-moving party.'" (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000))). Thus, summary judgment was appropriate.[9]

## IV. Conclusion

For the foregoing reasons, we **affirm** the district court's grant of summary judgment in favor of the Estate.

---

[9] Renee also argues that the Divorce Agreement additionally satisfies the court-order exception because the probate court incorporated the Divorce Agreement into the divorce judgment. The district court rejected this argument in a footnote, explaining that Renee had not "articulated any basis for finding that application of the court-order exception would entail different analysis or yield a different result than the contract exception" and that Renee had "effectively waived the opportunity to advance a reasoned argument based on the court-order exception." We agree with the district court's assessment. Even assuming that incorporating the Divorce Agreement into the divorce judgment rendered that agreement a court order for the purposes of section 2-804(b), see Parker, 178 N.E.3d at 867 n.8 (suggesting that separation agreement incorporated into divorce judgment could be considered under court-order exception), the problem remains that the Divorce Agreement does not provide that Renee should remain the beneficiary post-divorce. Thus, we reject this argument.